[No. B128058. Second Dist., Div. Seven. Aug. 21, 2000.]

VICTOR CRUZ, Plaintiff and Respondent, v.
HOMEBASE et al., Defendants and Appellants.

162

---

**COUNSEL**

Rushfeldt, Shelley & Drake, Scott A. Freedman; Greines, Martin, Stein & Richland, Kent L. Richland, Marc J. Poster and Dana F. Gardner for Defendants and Appellants.

Haight, Brown & Bonesteel, Rita Gunasekaran; Manes & Watson and Hugh R. Manes for Plaintiff and Respondent.

**OPINION**

**NEAL, J.—**

## SUMMARY

Where a jury hearing a store patron's claims for battery, false imprisonment and malicious prosecution found for the patron on the battery claim, but hung on the others, it was proper thereafter to try only the false imprisonment and malicious prosecution claims to a second jury, with appropriate admonitions about the prior battery verdict. A corporation is not deemed to ratify misconduct, and thus become liable for punitive damages, unless its officer, director, or managing agent actually knew about the misconduct and its malicious character. A "managing agent" is an employee with authority to establish corporate policy, that is, the broad principles and rules of general application which govern corporate conduct.

## FACTS AND PROCEEDINGS

Respondent Victor Cruz sued appellant HomeBase, its security guard appellant Jose Meraz, and Meraz's supervisor, appellant John Kinsel, for battery, false imprisonment, and malicious prosecution. Cruz sought punitive as well as compensatory damages.

The case was tried to a jury. Cruz offered evidence that HomeBase's Meraz accused Cruz of stealing a sheet of plywood, though Cruz had a receipt and offered to display it. Meraz and Kinsel detained Cruz, handcuffed him, kicked him, pushed him into a bench and a wall, spilled his wallet and its contents on the floor, and called him derogatory names. When a police officer arrived, Cruz showed his receipt; Cruz nonetheless was arrested, taken to the police station, stripped, searched, booked, and held until his wife posted bail. Cruz was subsequently tried on two counts of misdemeanor battery, but acquitted after 10 minutes of jury deliberation.

Meraz testified that Cruz refused, despite Meraz's request, to show his receipt, and struck him. Kinsel testified that Cruz knocked off his glasses. Meraz and Kinsel denied striking Cruz or calling him names.

Cruz's claimed damages included $9,000 in attorneys fees defending against the criminal charges, as well as general damages for humiliation and the like.

Cruz sought to prove that HomeBase ratified Kinsel's and Meraz's misconduct by retaining them as employees despite knowledge or reason to

know of their mistreatment of Cruz. He offered evidence that Kinsel and Meraz prepared reports of the incident, as required by company policy; that HomeBase's loss prevention director had in the past commended Kinsel for similar reports, evidencing that the director sometimes read the reports; and that Kinsel told the district supervisor and the store's general manager about the incident with Cruz. Kinsel's report mentioned a "battery" but did not say who battered whom, nor did it identify Cruz or Meraz. Not surprisingly, Kinsel and Meraz did not report that they had committed an unjustified or outrageous attack on Cruz. There was no evidence that Kinsel's superiors deliberately or systematically avoided investigating incidents with customers in order to insulate Homebase from liability.

Neither Kinsel nor Meraz was ever disciplined for the incident.

Cruz presented neither trial nor deposition testimony to show that the loss prevention director or other superiors of Kinsel actually knew that Kinsel or Meraz had committed intentional torts against Cruz (both Kinsel and Meraz had left HomeBase's employ by the time of trial).

Evidence was presented about Kinsel's place in the corporate hierarchy. Kinsel was the loss prevention supervisor for the single store where Cruz was detained. Kinsel's immediate supervisor was the store's general manager. He supervised only a few employees, and his discretionary power was limited to detaining and prosecuting low level offenders.

The court's jury instructions at the close of the evidence included an instruction that the jury could ascribe malice (required for punitive damages) to HomeBase if an officer, director or managing agent continued an agent's employment "after knowledge of or *an opportunity to learn of*" the agent's misconduct. HomeBase objected to this, contending that Cruz must prove a corporate director, officer, or managing agent had actual knowledge of employee misconduct to ratify the conduct by inaction.

At the conclusion of the first trial, the jury found for Cruz on the battery claim, awarding $65,000 in damages. The jury was unable to agree on a verdict on the false imprisonment and malicious prosecution claims or the punitive damages claim.

The court declared a mistrial as to the unresolved claims, and, after discussing the appropriate next step with counsel, scheduled a new trial on the unresolved claims only. HomeBase did not object to this order.

At HomeBase's request the court told the jury venire for the second trial of Cruz's earlier recovery of $65,000 for battery. The court also identified

the mistried claims, and told the jurors the second trial would be limited to these.

At close of the evidence, HomeBase's counsel proposed, and Cruz agreed, that the court should give the same instructions as in the first trial, save for deleting the battery instructions. When it read the instructions to the second jury, the court inadvertently read some of the deleted matter, but no lawyer noticed or objected, and all agreed that the written instructions sent in with the jury were proper (the latter are not in the appellate record.)

The trial court stressed to the jury that it was not to reconsider the battery claim, and that any damages for the other torts should be "over and above" the damages awarded for battery. HomeBase's counsel drew attention to this admonition in opening statement and closing argument. The instructions and special verdict form specified that the jury's task was to consider awarding additional damages for the new torts. The trial court also offered to specify for the jury the elements of damage awarded in the previous trial. HomeBase did not take the court up on this offer.

This time the jury found for Cruz on the false arrest and malicious prosecution claims, awarding him $200,000 in additional compensatory damages. They also awarded $400,000 in punitive damages, finding by special verdict that Meraz and Kinsel had acted maliciously, and that HomeBase had ratified their misconduct.

This appeal followed.

## DISCUSSION

■ HomeBase contends that the partial retrial ordered by the trial court was improper, because Cruz's claims were factually indivisible.

When a jury decides fewer than all causes of action, the trial court may order a retrial addressing only the unresolved claims if the issues are distinct and retrial works no injustice. (*Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1478, 1480 [81 Cal.Rptr.2d 252].)

Here Cruz's false imprisonment and malicious prosecution claims raised issues separate and distinct from his battery claim. The jury's prior finding that a battery occurred did not compel conclusion in the second trial that

Cruz was wrongly detained or subjected to prosecution. The legal elements and facts on which each tort rested were separate and distinct.

In any event, HomeBase waived any objection to the partial retrial by failing to object to it at any time before this appeal.

■ HomeBase claims that the second compensatory award may contain damages duplicative of those in the first, and that the trial court failed to adequately instruct the jury so as to avoid duplication.

However, the trial court repeatedly told the second jury that any damages to be awarded were over and above those given in the first trial—a point also emphasized by HomeBase's counsel in both opening statement and closing argument. The trial court further offered to specify to the second jury the elements of damage compensated by the first award, but HomeBase failed to accept this offer or to propose explanatory or limiting instructions on this point.

The trial court may have created some confusion on this by inadvertently reading matter concerning battery to the second jury. But appellants neither objected nor called the error to the court's attention, waiving any right to raise the issue on appeal.

Further, there is no evidence the jury was confused or misled on these issues. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

■ HomeBase argues there was insufficient evidence to support the punitive damages award.

Cruz supported his punitive damages claim with two theories. First, Cruz argued that Kinsel was a "managing agent" whose malice should be imputed to the corporation. Second, Cruz urged that HomeBase corporate higher-ups had an opportunity to learn of Kinsel's and Meraz's misconduct from written reports provided to them. These officials, according to Cruz, ratified Kinsel's and Meraz's misconduct by retaining them in employment despite the receipt of reports casting doubt on their fitness.

Punitive damages are awarded not to compensate a tort victim but to punish persons " 'guilty of recklessness or wickedness.' " (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 569 [88 Cal.Rptr.2d 19, 981 P.2d 944],

quoting *Warner v. Southern Pacific Co.* (1896) 113 Cal. 105, 112 [45 P. 187].) Punitive damages are awarded only where there is malice, oppression, or fraud, defined (paraphrasing the standard instructions) to mean intent to injure or willful and conscious disregard of others' rights.

Corporations are legal entities which do not have minds capable of recklessness, wickedness, or intent to injure or deceive. An award of punitive damages against a corporation therefore must rest on the malice of the corporation's employees.

But the law does not impute every employee's malice to the corporation. Instead, the punitive damage statute requires proof of malice among corporate leaders: the "officer[s], director[s], or managing agent[s]." (Civ. Code, § 3294, subd. (b).) This is the group whose intentions guide corporate conduct. By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate "state of mind" or the intentions of corporate leaders. This assures that punishment is imposed only if the *corporation* can be fairly be viewed as guilty of the evil intent sought to be punished. " '[T]o award [punitive] damages against the master for the criminality of the servant is to punish a man for that of which he is not guilty.' " (*White v. Ultramar, Inc., supra,* 21 Cal.4th at 569, quoting *Warner v. Southern Pacific Co., supra,* 113 Cal. at p. 112.)

"Managing agents" are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine *corporate policy.*" (*White v. Ultramar, Inc., supra,* 21 Cal.4th at p. 573, italics added.) "Corporate policy" is not defined by statute, nor in the case law relating to punitive damages. Dictionary definitions of "policy" include the following: "The general principles by which a government is guided in its management of public affairs." (Black's Law Dict. (7th ed. 1999) p. 1178); "A principle, plan or course of action as pursued by a government, organization, individual etc." (Webster's New World Dict. (3d college ed. 1991) p. 1045.) The Supreme Court has defined "official policy" (in a case considering municipal liability for a sheriff's torts) as "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." (*Pembaur v. Cincinnati* (1986) 475 U.S. 469, 480-481 [106 S.Ct. 1292, 1299, 89 L.Ed.2d 452].)

By analogy to these definitions, "corporate policy" is the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations. A "managing agent" is one with

substantial authority over decisions that set these general principles and rules. *White* illustrates this. The court there found that a regional director of eight stores, who supervised 65 employees, and had "most if not all" responsibility for running the eight stores, had sufficient authority over corporate policy to be a "managing agent." There was a strong inference that a manager with these powers had authority to set corporate policies.

Here, there was no evidence that Kinsel was an officer or director, and the evidence was insufficient, as a matter of law, to show that Kinsel was a managing agent. Kinsel was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain. He supervised only a few employees, and had authority over only one narrow area of the single store's multifaceted operations: security. There was not a hint of evidence that he exercised authority over corporate principles or rules of general application in the corporation.

It is true that, despite his limited sphere of authority, Kinsel's decisions could have significant consequences, as the present case shows. But, then, every corporate employee's reckless or malicious conduct has the potential to cause serious injury. Whether the corporation will be liable for punitive damages depends, not on the nature of the consequences, but rather on whether the malicious employee belongs to the leadership group of "officers, directors, and managing agents."

Turning to Cruz's theory that HomeBase ratified Kinsel's misconduct, "ratification" is the "[c]onfirmation and acceptance of a previous act." (Black's Law Dict., *supra*, p. 1268.) A corporation cannot confirm and accept that which it does not actually know about. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 726 [34 Cal.Rptr.2d 898, 882 P.2d 894] [for ratification sufficient to justify punitive damages against corporation, there must be proof that officers, directors, or managing agents had *actual knowledge* of the malicious conduct and its outrageous character].)

Here, there was insufficient evidence to sustain a punitive damages award based on ratification. There was no evidence that HomeBase's officers, directors, or managing agents had *actual knowledge* that Kinsel or Meraz had acted maliciously, as required under *College Hospital*. Evidence that reports routinely submitted to the officers might have provided the occasion for further investigation, possibly leading to discovery of employee misconduct, is not enough.

Cruz's postargument request for judicial notice of matters outside the record is denied.

### DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to enter a new and different judgment awarding plaintiff the compensatory damages found by the jury but not the punitive damages. The parties shall bear their own costs on appeal.

Lillie, P. J., and Woods, J., concurred.

Petitions for a rehearing were denied September 14, 2000, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 13, 2000.