Filed 9/18/13; pub. order 10/8/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LISA DAVIS, | D062388 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU04765) |
| KIEWIT PACIFIC CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge. Affirmed in part, reversed in part, and remanded with directions.

Dumbeck & Dumbeck, Jason D. Dumbeck and Curtis M. King for Plaintiff and Appellant.

Seyfarth Shaw, Ann Kotlarski and Brian M. Stolzenbach for Defendant and Respondent.

The trial court entered a judgment for plaintiff Lisa Davis after a jury found defendant Kiewit Pacific Co. (Kiewit) liable for gender discrimination, hostile work

environment harassment, retaliation, and failure to prevent harassment, gender discrimination, or retaliation. However, before trial, the trial court granted Kiewit's motion for summary adjudication on Davis's claim for punitive damages, concluding there were no triable issues of material fact whether a managing agent of Kiewit had engaged in or ratified any oppressive, malicious and/or fraudulent conduct against her. Davis appeals, contending the trial court erred by granting Kiewit's motion for summary adjudication on her punitive damages claim because there is a triable issue of material fact regarding whether a managing agent of Kiewit engaged in or ratified the wrongful conduct against her. As we discuss below, we conclude a triable issue of material fact exists for determination by a jury.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007 and 2008, Davis was employed by Kiewit as a box grader operator on its $170 million contract to excavate a 12-mile segment of the All American Canal (AAC) in Imperial County and line it with concrete (Project). At times, Kiewit had over 100 employees working on the Project during day and night shifts. Davis was one of two women who worked on the day shift excavation crew.

While working on the Project, Davis often had difficulty accessing portable toilets. They were often located miles from the work area. Also, her foreman frequently did not take the portable toilets away for pumping and cleaning, leaving them in an unsanitary condition. Davis asked her foreman, the day shift superintendent, the night shift superintendent, and the safety officer to resolve the portable toilet problem. They

2

disregarded her repeated requests. On one occasion, her foreman told her "to go find a bush." Davis ultimately spoke to Kyle Preedy, Kiewit's project manager for the Project, about the insufficient number of portable toilets and their location away from the job site and lack of cleanliness. Preedy was Kiewit's highest ranking employee on the site. Although Preedy told her he would look into the issues, neither he nor anyone else followed up with her regarding her concerns.

On arriving at the job site on the morning of January 18, 2008, Davis opened the door to the women's portable toilet and saw feces smeared all over the toilet seat and a pornographic magazine placed on the toilet paper dispenser. The magazine displayed photographs of obese women engaged in sexual acts. Davis believed the feces and demeaning magazine were left in the portable toilet for her in retaliation for her complaints about the portable toilets. She immediately informed Steve Northington, her foreman, of the incident, and later that day spoke with Dave Hunt, the day shift superintendent, regarding the matter. Her coworkers stated that the night shift workers had done it. Hunt reported the incident and gave the magazine to Bob Faulk, his superior, but never learned what action was taken thereafter. Preedy apparently learned of the incident that day. However, no one apparently investigated to determine who was responsible for the incident. Thereafter, Davis's crew members would not speak to her.

On February 21, 2008, Davis filed a complaint with Cal-OSHA regarding the availability and unsanitary conditions of Kiewit's portable toilets and Kiewit's not providing breaks. On February 27, she complained to John Lochner, Kiewit's equal

3

employment opportunity (EEO) officer, regarding Kiewit's not providing access to sanitary portable toilets or investigating the January 18, 2008, incident. Davis told Lochner she was afraid of losing her job or other retaliation because of her complaint. However, Lochner did not take any action to prevent retaliation against Davis.

On March 6, 2008, Kiewit laid off most of the excavation crew members, including Davis. The lay-off was a surprise to the crew members because shortly before that date Preedy had assured them they would not be laid off for a long time as there were six miles of the AAC yet to be excavated. One week after the lay-off, Kiewit began to selectively rehire excavation crew members. By the third week after the lay-off, Kiewit had rehired a full day shift; however, Davis was not rehired. Using full day and night crews, Kiewit thereafter completed excavation of the AAC by April 2010.

In October 2008, Davis filed the instant complaint against Kiewit, alleging causes of action for discrimination, harassment, retaliation, and failure to prevent discrimination, harassment, and retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) and for not paying wages in violation of the Labor Code. She alleged that Kiewit's conduct was malicious and oppressive and committed and/or ratified by its managing agents to support her request for an award of punitive damages.

Kiewit filed a motion for summary judgment or, in the alternative, summary adjudication of causes of action. It moved for summary adjudication on Davis's request for punitive damages, arguing she could not recover punitive damages as a matter of law "because no officer, director or managing agent of [Kiewit] engaged in or ratified any

4

oppressive, malicious, and/or fraudulent conduct against [her]." Kiewit asserted that none of the employees about whom Davis complained (e.g., Preedy and Lochner) were officers, directors or managing agents of Kiewit. In support of its motion, Kiewit submitted a revised separate statement of undisputed material facts and declarations of Preedy, Lochner and other employees asserting they did not determine Kiewit's corporate policy or have any substantial discretionary authority over decisions that determine its corporate policy.

Davis opposed Kiewit's motion for summary judgment or, in the alternative, summary adjudication. She argued Preedy and Lochner were managing agents of Kiewit. In support of her opposition, she submitted declarations and other evidence supporting her assertion that Preedy and Lochner were managing agents of Kiewit. She also submitted a separate statement of disputed and additional material facts.

On December 27, 2010, following a hearing on Kiewit's motion, the trial court issued a written order denying Kiewit's motion for summary judgment and motions for summary adjudication of six issues, but granting its motion for summary adjudication on Davis's request for punitive damages. The court concluded "[Davis] cannot recover punitive damages as a matter of law because no officer, director or managing agent of Kiewit engaged in or ratified any oppressive, malicious and/or fraudulent conduct against [her]. (Revised Separate Statement of Undisputed Facts, UF Nos. 123-124.)"

Following trial on Davis's action, the jury returned special verdicts finding Kiewit liable on each of her four FEHA causes of action and determined her economic and

5

noneconomic damages for each cause of action.  On November 19, 2012, the trial court entered an amended judgment for Davis on the special verdicts and awarded her $160,000 for past lost earnings and $110,000 for noneconomic losses, for a total award of $270,000 in damages.  Davis timely filed a notice of appeal challenging the trial court's order granting Kiewit's motion for summary adjudication on her request for punitive damages.

## DISCUSSION

### I

### *Summary Adjudication Standard of Review*

A party may move for summary adjudication as to any cause of action, affirmative defense, or claim for damages.  (Code Civ. Proc., § 437c, subd. (f)(1).)[1]  A motion for summary adjudication "shall proceed in all procedural respects as a motion for summary judgment."  (§ 437c, subd. (f)(2).

In reviewing an order granting summary adjudication of an issue, we apply the same de novo standard of review that applies to an appeal from an order granting summary judgment.  (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 950-951; *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [appellate court correctly independently reviewed trial court's order denying summary adjudication of issue].)  We now discuss that standard of review.  "On appeal after a

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise specified.

motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

*Aguilar* clarified the standards that apply to summary judgment motions under section 437c. (*Aguilar*, *supra*, 25 Cal.4th at pp. 843-857.) Generally, if all the papers submitted by the parties show there is no triable issue of material fact and the " 'moving party is entitled to a judgment as a matter of law,' " the court must grant the motion for summary judgment. (*Aguilar*, at p. 843, quoting § 437c, subd. (c).) Section 437c, subdivision (p)(2), states:

> "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."

*Aguilar* made the following observations:

7

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . .

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. . . .

"Third, and generally, how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. . . . [I]f a defendant moves for summary judgment against . . . a plaintiff [who would bear the burden of proof by a preponderance of the evidence at trial], [the defendant] must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not--otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851, fns. omitted.)

*Aguilar* stated:

"To speak broadly, all of the foregoing discussion of summary judgment law in this state, like that of its federal counterpart, may be reduced to, and justified by, a single proposition: *If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment.* In such a case, . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device." (*Aguilar*, *supra*, 25 Cal.4th at p. 855, italics added.)

8

"[E]ven though the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact. . . .* In so doing, it does not decide on any finding of its own, but simply decides what finding such a trier of fact could make for itself." (*Aguilar*, *supra*, 25 Cal.4th at p. 856.) "[I]f the court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show and imply [the ultimate fact] *only as likely as* [not] *or even less likely*, it must then grant the defendants' motion for summary judgment, even apart from any evidence presented by the defendants or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff. Under such circumstances, the [factual] issue is not triable--that is, it may not be submitted to a trier of fact for determination in favor of either the plaintiff or the defendants, but must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff." (*Id*. at p. 857, fn. omitted.)

"On appeal, we exercise 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.] 'The appellate court must examine only papers before the trial court when it considered the motion, and not documents filed later. [Citation.] Moreover, we construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the

9

motion in favor of the party opposing it.' " (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202.)

II

*Corporate Liability for Punitive Damages Generally*

Punitive damages generally may be awarded to a plaintiff in a civil action only if "the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) Corporations may be held liable for punitive damages through the malicious acts or omissions of their employees, but only for the acts or omissions of those employees with sufficient discretion to determine corporate policy. (*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167.) Civil Code section 3294, subdivision (b), provides:

> "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. *With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation*." (Italics added.)

"Managing agents" are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 573 (*White*).) *White* concluded: "[T]he Legislature intended the term 'managing agent' to include only those corporate employees who exercise

10

substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." (*Id*. at pp. 566-567.) "[T]o demonstrate that an employee is a true managing agent under [Civil Code] section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the *employee exercised substantial discretionary authority over significant aspects of a corporation's business*." (*White*, at p. 577, italics added.) "The scope of a corporate employee's discretion and authority under our [managing agent] test is therefore a *question of fact* for decision on a case-by-case basis." (*Id*. at p. 567, italics added.) If there exists a triable issue of fact regarding whether a corporate employee is a managing agent under the *White* test, that factual question must be determined by the trier of fact and not the court on a motion for summary adjudication. (§ 437c, subds. (c), (f); *Aguilar*, *supra*, 25 Cal.4th at pp. 856-857; cf. *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 63.)

III

*Triable Issues of Material Fact Regarding Whether*
*Preedy and Lochner Were Managing Agents of Kiewit*

Davis contends the trial court erred by granting Kiewit's motion for summary adjudication of her punitive damages claim because there are triable issues of material fact whether Preedy and Lochner were managing agents of Kiewit.

A

In moving for summary adjudication of Davis's claim for punitive damages, Kiewit argued that none of its officers, directors, or managing agents "engaged in or

11

ratified any oppressive, malicious, and/or fraudulent conduct against [her]."  Kiewit

asserted that none of the employees about whom Davis complained (e.g., Preedy and

Lochner) were officers, directors, or managing agents of Kiewit.  Kiewit's separate

statement of undisputed material facts and the declarations of Preedy, Lochner and other

employees asserted they did not determine Kiewit's corporate policy or have any

substantial discretionary authority over decisions that determine its corporate policy.

Kiewit's revised separate statement asserted: "None of the Kiewit managers whom

[Davis] alleges engaged in or ratified malicious, fraudulent or oppressive conduct is an

officer, director or managing agent of Kiewit."  In his declaration in support of Kiewit's

motion, Preedy stated in part:

> "17.  I am not an officer or a director of Kiewit.  As a Kiewit
> employee, I have never drafted corporate policy or had substantial
> discretionary authority over decisions that ultimately determine
> Kiewit's corporate policy.  The only role that I play with respect to
> Kiewit's anti-harassment and EEO policies is to ensure that they are
> followed on the job."

In his declaration in support of the motion, Lochner stated in part:

> "19.  As a Kiewit employee, I have never had substantial
> discretionary authority over decisions that ultimately determine
> Kiewit's corporate policy.  I do not write or recommend
> implementation of any human resources policies and procedures."

In opposition to Kiewit's motion for summary adjudication, Davis argued Preedy

and Lochner were managing agents of Kiewit.  She submitted declarations and other

evidence supporting her assertion that Preedy and Lochner were managing agents of

Kiewit.  She also submitted a separate statement of disputed and additional material facts.

12

Her separate statement disputed Kiewit's assertion that none of its managers involved in the matter were officers, directors, or managing agents. Davis asserted Preedy was Kiewit's top management employee in charge of the $170 million Project and all other Kiewit managers on the Project reported to him. Citing Preedy's declaration and excerpts from his deposition transcript, she asserted Preedy's duties included interfacing with stakeholders on the Project, contract administration, operations and personnel oversight, and making sure the Project was completed according to the contract. She asserted: "As the project manager, [Preedy] had broad discretion relating to personnel issues and the allocation of resources to meet project goals." She also asserted he had the discretion to allow the use and possession of alcohol on the AAC by Kiewit's employees despite its written corporate policy prohibiting it on the job site. Citing reasonable inferences from her statement of additional disputed facts, Davis asserted Preedy had the authority and discretion to not initiate an investigation into the portable toilet incident despite Kiewit's written policy requiring an immediate investigation by a trained employee or third party investigator.

Davis also asserted Lochner was Kiewit's EEO officer and was responsible for administering its policies for prevention of discrimination, retaliation, and harassment based on gender and other protected classes for its entire Northwest District, including California. Also, she asserted all on-site EEO officers were trained to send all concerns about policy violations to Lochner. She asserted Lochner conducted training and

conducted or oversaw Kiewit's investigations relating to alleged discrimination, retaliation, or harassment.

In her statement of additional material facts, Davis asserted Kiewit did not conduct an investigation into the portable toilet incident and cited excerpts from deposition transcripts of four Kiewit employees. Lochner stated at his deposition that no investigation was conducted regarding the pornographic material in the portable toilet. Melanie Peterson, Kiewit's on-site EEO officer for the Project, stated at her deposition that she was not involved in and was unaware of any investigation regarding the pornographic material in the portable toilet. Likewise, Dave Hunt, Kiewit's day shift foreman on the Project, stated at his deposition that he did not investigate and was unaware of any investigation regarding the pornographic material in the portable toilet.

In reply, Kiewit argued it had "produced undisputed evidence that neither Mr. Preedy nor Mr. Lochner is a managing agent." In support of its argument, Kiewit cited its original separate statement in which it asserted that none of its managers involved in the matter were officers, directors, or managing agents of Kiewit.[2] In support of that asserted undisputed fact, Kiewit cited the declarations of Preedy and Lochner, as quoted above. Kiewit argued that Davis did not successfully dispute its asserted undisputed fact by describing the job functions of Preedy and Lochner because the determination of whether an employee is a managing agent is not determined solely based on the employee's hierarchy in the corporation. Kiewit responded to Davis's

---

[2] That assertion was restated in Kiewit's revised separate statement.

14

statement of additional material facts, disputing her assertion that no investigation was conducted regarding the portable toilet incident. Kiewit presumably conceded Davis's description of the job duties and responsibilities of Preedy and Lochner, admitting the truth of their deposition testimony regarding their job duties and responsibilities.

Following arguments of counsel, the trial court granted Kiewit's motion for summary adjudication on Davis's claim for punitive damages, concluding that "[she] cannot recover punitive damages as a matter of law because no officer, director or managing agent of Kiewit engaged in or ratified any oppressive, malicious and/or fraudulent conduct against [her]. (Revised Separate Statement of Undisputed Facts, UF Nos. 123-124.)"

B

*Preedy*. In moving for summary adjudication on the punitive damages issue, Kiewit had the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. Accordingly, Kiewit had the initial burden to produce sufficient evidence to make a prima facie showing that there were no triable issues regarding whether Preedy and Lochner (or any other Kiewit managers or employees involved in the incident) were managing agents of Kiewit. Kiewit argued it was undisputed that Preedy was not a managing agent of Kiewit. Kiewit's separate statement and Preedy's declaration asserted he did not determine its corporate policy or have any substantial discretionary authority over decisions that determine its corporate policy. Preedy stated in his declaration: "As a Kiewit employee, *I have never* drafted

15

corporate policy or *had substantial discretionary authority over decisions that ultimately determine Kiewit's corporate policy*. The only role that I play with respect to Kiewit's anti-harassment and EEO policies is to ensure that they are followed on the job." (Italics added.) However, the language italicized above states a legal conclusion by simply parroting the *White* standard. In *White*, the California Supreme Court stated "managing agents" are employees who "exercise[] *substantial discretionary authority over decisions that ultimately determine corporate policy*." (*White*, *supra,* 21 Cal.4th at p. 573, italics added.) Kiewit cannot satisfy its initial burden of production of *evidence* by making a conclusory statement of *law*, whether directly or through a declaration of one of its employees (e.g., Preedy). Kiewit had the initial burden to produce sufficient *evidence* to make a prima facie showing that there was no triable issue regarding whether Preedy was a managing agent of Kiewit. We conclude Kiewit, by simply restating the applicable legal standard under *White* for the determination of whether Preedy was its managing agent, did not satisfy its initial burden of production.

Furthermore, to the extent Kiewit also relies on Preedy's additional statements that he did not draft Kiewit's corporate policies and only ensured that its anti-harassment and EEO policies were followed on the job, that statement was insufficient to satisfy Kiewit's initial burden of production to make a prima facie showing that Preedy was not its managing agent. Preedy's declaration did not contain a sufficient description of his job duties and responsibilities and the nature and extent of his authority and discretion as the Project's manager, as well as his exercise of that authority and discretion, to support a

16

reasonable inference that he did not "*exercise*[] *substantial discretionary authority over significant aspects of* [Kiewit's] *business*." (*White, supra*, 21 Cal.4th at p. 577, italics added.) Accordingly, we conclude Kiewit did not carry its initial burden of production to make a prima facie showing that Preedy was not its managing agent. Therefore, the trial court erred by concluding there was no triable issue of material fact whether Preedy was a managing agent of Kiewit.

In any event, assuming arguendo that Kiewit carried its initial burden of production to make a prima facie showing that Preedy was not its managing agent, we nevertheless conclude Davis carried her burden to produce sufficient evidence to make a prima facie showing of the existence of a triable issue of material fact regarding whether Preedy was a managing agent of Kiewit. Without restating all of the evidence discussed above, Davis submitted sufficient evidence directly showing, or supporting a reasonable inference, that Preedy "*exercised substantial discretionary authority over significant aspects of* [Kiewit's] *business*." (*White*, 21 Cal.4th at p. 577, italics added.) Preedy, as the Project's manager, was Kiewit's top on-site manager. He had the responsibility to oversee and manage the $170 million project, including over 100 Kiewit employees working on the site. Preedy's duties included interfacing with stakeholders on the Project, contract administration, operations and personnel oversight, and making sure the Project was completed according to the contract. In performing those duties, a trier of fact could reasonably infer he exercised substantial authority and discretion regarding a broad range of issues involving the Project, including compliance with Kiewit's policies

17

and the hiring, supervision, and laying off of Project employees. Absent evidence showing that management of a $170 million project with supervision of 100 employees is an insignificant part of Kiewit's business, a trier of fact could reasonably infer from the above evidence that Preedy "exercised substantial discretionary authority over significant aspects of [Kiewit's] business" and therefore was a managing agent of Kiewit. (*Ibid*.)

Although it is generally true, as Kiewit asserts, that an employee's hierarchy in a corporation is not necessarily determinative of his or her status as a managing agent of a corporation, evidence showing an employee's hierarchy and job duties, responsibilities, and authority may be sufficient, absent conclusive proof to the contrary, to support a reasonable inference by a trier of fact that the employee is a managing agent of a corporation. In the circumstances of this case, we conclude Davis presented sufficient evidence to make a prima facie showing that Preedy was a managing agent of Kiewit and therefore there was a triable issue of material fact that precluded summary adjudication for Kiewit on her punitive damages claim.

None of Kiewit's cited cases are apposite to this case or otherwise persuade us there is no triable issue of fact whether Preedy was its managing agent. (See, e.g., *Cruz v. HomeBase*, *supra*, 83 Cal.App.4th at p. 168 [reversing punitive damages award because single store's security supervisor who supervised only a few employees was not a managing agent of corporation]; *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 406, 421 [upholding jury's finding that local administrator who supervised only two employees was not a managing agent of corporation].) On the contrary, the weight of

case law appears to support a reasonable inference that Preedy was, in the circumstances of this case, a managing agent of Kiewit. (See, e.g., *White*, *supra*, 21 Cal.4th at pp. 577-578 [because supervision of eight retail stores and 65 employees was a significant aspect of corporation's business, zone manager who supervised those stores and exercised significant discretionary authority affecting those stores and company policy was a managing agent of corporation]; *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1220-1221 [substantial evidence supported jury's finding that regional insurance claims manager who managed 35 claims employees and exercised discretionary authority to pay or deny claims was a managing agent of the corporation]; *Hobbs v. Bateman Eichler, Hill Richards, Inc.* (1985) 164 Cal.App.3d 174, 193 [manager of single branch office of securities brokerage firm was a managing agent of corporation because he was responsible for supervision of office's 8,000 accounts to ensure they were not being churned].)

Because there is a triable issue of material fact regarding whether Preedy was a managing agent of Kiewit, the trial court erred by granting Kiewit's motion for summary adjudication of Davis's punitive damages claim.

C

*Lochner*. First, as we concluded above regarding Preedy, Kiewit did not carry its initial burden of production to make a prima facie showing that there was no triable issue regarding whether Lochner was a managing agent of Kiewit. Kiewit's separate statement and Lochner's declaration asserted he did not determine its corporate policy or have any

19

substantial discretionary authority over decisions that determine its corporate policy. Lochner stated in his declaration: "As a Kiewit employee, *I have never had substantial discretionary authority over decisions that ultimately determine Kiewit's corporate policy*. I do not write or recommend implementation of any human resources policies and procedures." (Italics added.) However, the language italicized above states a legal conclusion by simply parroting the *White* standard. In *White*, the California Supreme Court stated that "managing agents" are employees who "exercise[] *substantial discretionary authority over decisions that ultimately determine corporate policy*." (*White*, *supra,* 21 Cal.4th at p. 573, italics added.) Kiewit cannot satisfy its initial burden of production of *evidence* by making a conclusory statement of *law*, whether directly or through a declaration of one of its employees (e.g., Lochner). Kiewit had the initial burden to produce sufficient *evidence* to make a prima facie showing that there was no triable issue regarding whether Lochner was a managing agent of Kiewit. We conclude that Kiewit, by simply restating the applicable legal standard under *White* for the determination of whether Lochner was its managing agent, did not satisfy its initial burden of production.

Furthermore, to the extent Kiewit also relies on Lochner's additional statements that he did not write or recommend implementation of any of Kiewit's human resources policies and procedures, that statement was insufficient to satisfy Kiewit's initial burden of production to make a prima facie showing that Lochner was not its managing agent. Lochner's declaration did not contain a sufficient description of his job duties and

20

responsibilities and the nature and extent of his authority and discretion, as well as his exercise of that authority and discretion, to support a reasonable inference that he did not "*exercise*[] *substantial discretionary authority over significant aspects of* [Kiewit's] *business*." (*White, supra*, 21 Cal.4th at p. 577, italics added.) Accordingly, we conclude Kiewit did not carry its initial burden of production to make a prima facie showing that Lochner was not its managing agent. Therefore, the trial court erred by concluding there was no triable issue of material fact whether Lochner was a managing agent of Kiewit.

In any event, assuming arguendo that Kiewit carried its initial burden of production to make a prima facie showing that Lochner was not its managing agent, we nevertheless conclude Davis carried her burden of production to make a prima facie showing there is a triable issue of fact regarding whether Lochner was a managing agent of Kiewit. Based on the evidence submitted by the parties, a trier of fact could reasonably find Lochner was a managing agent of Kiewit. Lochner, as Kiewit's EEO officer, had the duties and responsibilities to enforce its policies against discrimination, retaliation, and harassment based on gender and other protected classes. A trier of fact could therefore reasonably infer he had the authority and discretion regarding enforcement of those policies because he did not conduct, or direct anyone else to conduct, an investigation regarding the portable toilet incident. In his declaration, Lochner stated, as Kiewit's district EEO officer, he was responsible for administering Kiewit's policies that prevent discrimination, retaliation, and harassment based on gender and other protected groups for the Northwest District. Lochner stated he "conducted

21

training for staff employees (supervisory personnel); took and responded to employee complaints about EEO and other issues; and conducted or oversaw investigations regarding a variety of employee relations issues including alleged discrimination, retaliation and/or harassment."

Kiewit's policy manual set forth its EEO policy and described, in part, the responsibilities of its EEO officer (i.e., Lochner) as follows:

> "The responsibilities of [Kiewit's] EEO Officer or his designates shall include, but not necessarily be limited to: The administration and coordination of the Affirmative Action Program, the investigation of any complaint of discrimination and the implementation of any necessary corrective action, the dissemination of the EEO Policy and Affirmative Action Program, the periodic review of [Kiewit's] employment records and practices to assure that [Kiewit's] Affirmative Action Program and EEO Policy [are] being administered on a nondiscriminatory basis and the initiation, as necessary, of changes to the Affirmative Action Program and/or [Kiewit's] employment policies."

Based on those descriptions of Lochner's position, a trier of fact could reasonably infer he had authority and discretion in making, interpreting, and applying Kiewit's EEO policies on a corporation-wide basis and therefore had authority and discretion to make decisions that ultimately determine corporate policy. (*White*, *supra*, 21 Cal.4th at pp. 566-567, 577.) Furthermore, a trier of fact could reasonably infer that, despite the fear Davis expressed to him regarding possible retaliation for her reporting of the portable toilet issues, Lochner exercised his authority and discretion to not enforce Kiewit's policy against retaliation and/or to protect her from retaliation and, in so doing, exercised authority that resulted in the ad hoc formulation of corporate policy. (*Egan v. Mutual of*

22

*Omaha Ins. Co.* (1979) 24 Cal.3d 809, 823.)  We conclude there is a triable issue of fact regarding whether Lochner was a managing agent of Kiewit.  Therefore, based on this additional ground, the trial court erred by granting Kiewit's motion for summary adjudication of Davis's claim for punitive damages.[3]

## DISPOSITION

The judgment is reversed to the extent it denied Davis's claim for punitive damages and the matter is remanded for further proceedings.  In all other respects, the judgment is affirmed.  On remand, the trial court is directed to vacate its order granting Kiewit's motion for summary adjudication of the claim for punitive damages, issue a new order denying that motion, and conduct further proceedings consistent with this opinion. Davis shall recover her costs on appeal.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

---

[3]    Because we dispose of this appeal based on the above grounds, we need not address Davis's alternative contentions in support of her challenge to the trial court's order granting Kiewit's motion for summary adjudication of her punitive damages claim.

Filed 10/8/13

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LISA DAVIS, | D062388 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU04765) |
| KIEWIT PACIFIC CO., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion filed September 18, 2013, is ordered certified for publication.

NARES, Acting P. J.