Filed 3/8/22  Dillard v. Government Employees Ins. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

---

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

---

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KARMA DILLARD,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE CO.,<br><br>    Defendant and Respondent. | D077704<br><br><br><br>(Super. Ct. No. 37-2018-00021333-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed; remand with directions.

Gruenberg Law and Joshua P. Pang for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Spencer C. Skeen, Jack S. Sholkoff and Jennifer M. Hendricks for Defendant and Respondent.

Karma Dillard brought this action against her current employer, Government Employees Insurance Co. (GEICO), alleging a variety of causes of action under the California Fair Employment and Housing Act (FEHA)

(Gov. Code, § 12900 et seq.),[1] including failure to engage in the interactive process and failure to accommodate. The trial court granted GEICO's motion for summary judgment, and Dillard appeals the ensuing judgment.

Although the operative complaint contained seven causes of action, Dillard's appeal is only directed at three claims: failure to accommodate, failure to engage in the interactive process, and punitive damages. Because we conclude disputed issues of material fact exist as to those claims, we reverse the judgment and remand this matter to the trial court, with instructions to enter an order denying GEICO's motion for summary judgment consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Dillard began working for GEICO as a customer service representative in 2002. Within a few years, Dillard was promoted to the highest pay grade for her position. In 2007, she was promoted to an adjustor in the auto damage department, where she ultimately received the highest pay grade for her position. Some eight years later, Dillard was promoted to her current position as field supervisor in the auto damage department.

As a field supervisor, Dillard is generally responsible for managing a team of adjustors in evaluating and resolving auto damage claims. Her position requires a substantial amount of driving because Dillard performs her job out in "the field," which covers the Southern Riverside region. On average, Dillard drives 50 to 70 miles per day. GEICO provides company vehicles to each of its adjustors and field supervisors. In 2014, GEICO assigned Dillard a 2014 Chevrolet Cruze.

---

[1] Statutory references refer to the Government Code unless otherwise specified.

2

Since about 2003, Dillard has suffered from scoliosis, a chronic spinal health condition. The condition manifests in intermittent severe pain, although the pain and severity is not constant. The scoliosis flares up in certain situations and has progressed with age.

For her condition, Dillard has been under treatment by physicians and other medical care professionals. She has been able to manage her condition with various accommodations and treatment, including engaging in certain exercises and using a lumbar pillow to sleep.

Around June 2017, Dillard's condition became aggravated when she started taking longer drives in her car to meetings in Orange County. Instead of having to drive 50 to 70 miles a day, Dillard was finding herself spending four to six hours in traffic when she was required to travel to Orange County. When Dillard returned home from these drives, her back pain was so severe that she could not do much of anything for the remainder of those days.

Dillard experienced severe back pain sitting in her car, which did not have lumbar support. In addition, the Cruze's headrest pushed Dillard's head forward, resulting in migraine headaches (especially during the longer drives to Orange County).

On July 12, 2017, Dillard called Angela Alvarado, an employee in GEICO's human resources department, to complain that she was experiencing severe back pain that was worsened by long drives in the Cruze. Dillard requested lumbar support. Specifically, Dillard requested swapping her Cruze for a different GEICO vehicle that had built-in lumbar support. At that time, Dillard was aware that one of her subordinates had relinquished

3

her GEICO provided car, a Ford Fusion, the month before; so, she proposed exchanging her Cruze for the Fusion. Alvarado informed Dillard that she would send her paperwork to be filled out by her health care provider.

Two days later, Alvarado had not yet sent Dillard the paperwork; thus, Dillard sent her an email reminder. Alvarado apologized for the delay and emailed Dillard the promised paperwork. As instructed, Dillard faxed the paperwork to her health care provider's disability department on July 17, 2017. The provider did not return the completed form until late September 2017.

Among other things, the form stated that Dillard was "being followed for a serious health condition" and "requires lumbar support while seated and ergonomic consideration as needed for her job duties. This is a permanent recommendation."

After receiving the health care provider paperwork, GEICO did not further discuss the issue with Dillard. Instead, on October 3, 2017, GEICO purchased a $20 lumbar pillow for Dillard. The pillow was a cushion for the lower back. It did not provide adjustable lumbar support, and it did not include a seat cushion.

Dillard drove with the pillow for about a month. On October 30, 2017, Dillard notified GEICO's human resources department that the pillow was not accommodating her back condition. Dillard explained that the pillow pushed her forward, which caused a lack of support for her legs, resulting in even more pain in her lower back. Dillard informed GEICO: "I'm happy to send the pillow to you at the office (perhaps someone else can benefit from it), but at this time I'm going to re-request a fleet car with built-in lumbar support."

Eight days later, LaDonna Bond, GEICO's Human Resources Regional Manager, called Dillard and suggested Dillard try another pillow. However, Dillard was skeptical that a pillow would alleviate her pain. When Dillard asked if she was able to swap her Cruze for a company vehicle with built-in lumbar support, Bond asserted that GEICO "was unable to approve or provide a different fleet vehicle" because "the doctor's paperwork didn't recommend a different fleet vehicle." Dillard then asked "if the fleet vehicle didn't get approved because of the cost or was there none available." In response, Bond noted "that the doctor's recommendation was for lumbar support[,] which [GEICO] provided and not a different fleet vehicle." After the call, Bond emailed Dillard a link to a new car pillow option on Amazon.com.

Dillard remained concerned that a different pillow would not accommodate her condition. So, she conducted research and talked with an ergonomic specialist. On November 8, 2017, Dillard expressed doubt about Bond's accommodation plan, reminding Bond that her health care provider recommended "ergonomic consideration." In an email to Bond, Dillard suggested, "Before we invest in another pillow that may or may not work, I've found an ergonomic specialist that is willing to meet with me for an assessment. Her fee is $150. Are you willing to pay this fee, for ergonomic consideration, as my doctor recommended?" Bond declined to pay for the ergonomic assessment. Rather, she sent Colleen Moore, GEICO's worker's compensation coordinator and a licensed vocational nurse, to conduct an ergometric test and take a measurement of the Cruze. Moore met with Dillard and produced a report dated November 14, 2017. Among other observations contained in the report, Moore noted:

> "The driver's seat has basic adjustments that allow the driver to move forward and backwards in relation to the

5

steering wheel depth. The seat back does allow the driver to recline and sit up as needed. The seat pan doesn't allow for adjustment in depth and tilt. The lumbar support that is standard in the seat is not adjustable. I would recommend that [Dillard] be able to look at a few different types of lumbar supports, included in this report."

The report included links to three different types of lumbar support for car seats.

In an email dated November 28, 2017,[2] Dillard took issue with Moore's report and conveyed to Bond the following inaccuracies: (1) Although Moore stated the Cruze's headrest fit Dillard, it did not; (2) Moore stated that Dillard did not indicate discomfort in the Cruze until a lumbar pillow was added, but Dillard stated that she was uncomfortable even with the lumbar support pillow; and (3) the Cruze did not have built-in lumbar support (Moore reported it did). As part of her email, she attached an additional recommendation from her doctor regarding her scoliosis condition: "[Dillard] requires adjustable lumbar and seat pad support while seated[,] which would require mid size [sic] vehicle with ergonomic consideration as needed for her job duties. This is a permanent recommendation." Dillard again requested a vehicle change. Neither Bond nor anyone else at GEICO responded to Dillard's December 4 email. In fact, Bond stated that she did not remember receiving Dillard's email. Based on Bond's lack of response, Dillard "gave up" and assumed that further discussions with GEICO would not be fruitful.

In addition, in late November or early December 2017, Dillard visited GEICO's Poway regional office and talked to Bond in person. She told Bond that she was "not trying to make waves" but was experiencing intense back

_____

[2]    In an email dated December 4, 2017, Dillard apologized for not getting back to Bond sooner, explaining that she wanted to wait until she had a follow-up appointment with her doctor.

pain because of the lack of lumbar support. Dillard again asked about obtaining a new GEICO vehicle. In response, Bond admitted that Phil Gallimore, the Auto Damage Director, did not approve the vehicle change.

On April 30, 2018, about five months after she first engaged GEICO to address her back condition, Dillard filed suit against GEICO, alleging causes of action for: (1) gender discrimination (§ 12940, subd. (a)); (2) violation of the California Equal Pay Act (Lab. Code, § 1197.5, subd. (a)); (3) disability discrimination (§ 12940, subd. (a)); (4) failure to prevent discrimination (§ 12940, subd. (k)); (5) failure to accommodate (§ 12940, subd. (m)); (6) failure to engage in the interactive process (§ 12940, subd. (n)); and (7) intentional infliction of emotional distress.

Although she had filed suit against GEICO, Dillard continued to work for the company. On January 8, 2019, 17 months after initial accommodation request, GEICO allowed Dillard to swap her Cruze for a Fusion.

After answering the complaint and engaging in discovery, GEICO moved for summary judgment on all causes of action as well as Dillard's claim for punitive damages. In opposing the motion for summary judgment, Dillard dismissed her claims for gender discrimination, violation of the Equal Pay Act, failure to prevent discrimination, and intentional infliction of emotional distress. Thus, Dillard's opposition focused on her causes of action for failure to accommodate and failure to engage in the interactive process as well as her prayer for punitive damages.

After considering the papers and entertaining oral argument, the court granted GEICO's motion for summary judgment. Regarding Dillard's cause of action for failure to accommodate, the court explained:

> "[GEICO] reasonably accommodated [Dillard] by offering lumbar support options, which included an adjustable lumbar support for her mid-size vehicle. While this was

7

not the option [Dillard] preferred, [Dillard] has not shown that the accommodation was not reasonable. [GEICO] was not required to provide [Dillard] with her preferred accommodation. [GEICO] was within its rights to offer an adjustable lumbar support rather than a different vehicle. Further, [GEICO] eventually provided [Dillard] with a Ford Fusion. [Dillard] has not raised an issue of fact that the delay was so long that it effectively amounted to a refusal to accommodate."

As to Dillard's cause of action for failure to engage in the interactive process, the court noted that "[n]ot only did [GEICO] provide [Dillard] with a reasonable accommodation, but [Dillard] failed to even consider the lumbar support options suggested by Colleen Moore."

Because the court granted the motion for summary judgment as to the remaining two causes of action, it also granted the motion as to Dillard's prayer for punitive damages.

In reaching its conclusions, the court found that the Cruze was a mid-sized vehicle.

Dillard filed a timely notice of appeal from the ensuing judgment.

DISCUSSION

A. Standard of Review

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) A moving defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

8

Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) The court must consider all of the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. (*Aguilar*, at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law. (*Ibid.*)

### B. Failure to Provide Reasonable Accommodation

Dillard argues the trial court erred by granting summary judgment on the failure to accommodate cause of action. We agree.

FEHA prohibits employers from failing to make reasonable accommodation for the known physical or mental disability of an employee. (§ 12940, subd. (m)(1).) The elements of a failure to accommodate cause of action are: (1) the employee has a qualifying disability; (2) the employee can perform the essential functions of the job; and (3) the employer failed to provide reasonable accommodation for the employee's disability. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)

The employer must consider "any and all reasonable accommodations of which it is aware or that are brought to its attention by the . . . employee, except ones that create an undue hardship." (Cal. Code Regs., tit. 2, § 11068,

9

subd. (e).)  The employer "shall consider the preference of the applicant or employee to be accommodated, but has the right to select and implement an accommodation that is effective for both the employee and the employer." (*Ibid.*)  In other words, "[t]he employer is not obligated to choose the best accommodation or the accommodation the employee seeks." (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228.)  The " 'employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.' " (*Ibid.*; accord *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222 [FEHA requires only that the accommodation be reasonable, not that it be the best one or the one the employee seeks].)  The employer is entitled to summary judgment on a cause of action for failure to accommodate if it shows through undisputed facts that "reasonable accommodation was offered and refused." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.)  "Although the question of a reasonable accommodation is ordinarily a question of fact [citation], when the undisputed evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper." (*Raine*, at p. 1227, fn. 11.)

In the instant matter, GEICO offered seven undisputed, material facts supporting its claim that summary judgment was appropriate as to Dillard's failure to accommodate claim.  If any one of those material facts is disputed then summary judgment is not warranted.  (See Code. Civ. Proc., § 437c, subd. (c); *Aguilar*, *supra*, 25 Cal.4th at pp. 856-857.)  Here, we shall focus on three of GEICO's undisputed material facts:  (1) Dillard's doctor never provided a note stating that she needed a new car to do her job; (2) GEICO

provided Dillard with a Ford Fusion in November 2018 as soon as one became available; and (3) when Dillard requested a different vehicle in July 2017, GEICO did not have one available.

GEICO asserts it was an undisputed, material fact that Dillard did not produce a doctor's note stating that she needed a "new" car. As a threshold matter, this material fact is somewhat ambiguous. GEICO's use of the word "new" seems to mean new to Dillard (as in, she needs a different car), not a brand new car. Indeed, the context of the discussion about Dillard's request for a different car strongly supports this interpretation. As such, we read this material fact as GEICO claiming Dillard never produced any notation from her doctor that she needed a car different than the Cruze she was driving.

Dillard produced evidence that her doctor wrote that she requires an "adjustable lumbar and seat pad support while seated," which necessitates a mid-sized vehicle. Thus, Dillard's doctor did provide a note indicating that Dillard needed a mid-sized car. GEICO claims to have not received this note. Dillard asserts she sent it to Bond.

Although this note appears to dispute GEICO's statement of material fact, GEICO argues that the Cruze Dillard was driving at the time is a mid-sized car. In support of this assertion, GEICO states that Dillard admitted this conclusion during her deposition. Regarding the size of the Cruze, Dillard and GEICO's attorney engaged in the following exchange:

"Q.     Okay. Is that [the Cruze]—do you know if that's a mid size or a compact or—

"A.     I don't think it's a compact. If I had to guess, I would say it's a mid size.

"Q.     Yeah. I was looking at the rentals categories and I see it here listed as a mid size along with Toyota Corolla,

11

Ford Focus, Nissan Sentra, Dodge Avenger. [¶] Does that sound about right?

"A.      Yes.

"Q.      So you would agree that that's a mid size, correct?

"A.      Yes."

Thus, GEICO argues that Dillard admitted that she already had a mid-sized car. As such, GEICO maintains Dillard's second doctor's note does not say that Dillard needs a different car because it only states she needs a mid-sized car, which she admitted she already had. In other words, according to GEICO, what makes GEICO's statement of material fact undisputed is the fact that a Chevrolet Cruze is a mid-sized car. Indeed, the trial court based its conclusion that GEICO reasonably accommodated Dillard, in part, by providing "an adjustable lumbar support for her mid-size vehicle."

GEICO's and the trial court's use of Dillard's "admission" that the Cruze was a mid-sized car gives us pause. Whether a Cruze is a mid-sized car is an easily provable statement of fact. Either it is or it is not, regardless of what Dillard believes. GEICO is in the business of insuring cars. Thus, it seems logical that if GEICO would have wanted to prove the Cruze is a mid-sized car, it could have easily had an employee, who is very familiar with cars, offer an informed opinion as to that fact. Or GEICO could have used Chevrolet's promotional materials describing the Cruze as a mid-sized car (if it is classified as such). Yet, GEICO did not simply prove the fact that the Cruze is a mid-sized car. Instead, it points to Dillard's deposition testimony and claims that she admitted that fact.

Adding to our concern here is that Dillard's admission is not clear. She testified that if she had to "guess" then she would say it was a mid-size car. Guesses and speculation are not evidence. (See *Aguilar*, *supra*, 25 Cal.4th at

12

p. 864; cf. *LaChapelle v. Toyota Credit Corp.* (2002) 102 Cal.App.4th 977, 981; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.) During the deposition, GEICO's attorney attempted to lead Dillard to become more confident that the Cruze was a mid-size car by saying that it was listed in a rentals category with other cars—a Toyota Corolla, Ford Focus, Nissan Sentra, and Dodge Avenger. However, at least three of the four cars listed are compact not mid-size cars. Therefore, Dillard's "admission" that the Cruze is a mid-sized car is even more suspect.

In addition, on the record before us, the record is muddled regarding whether the parties disputed if the Cruze is a mid-sized car. For example, GEICO did not dispute one of Dillard's additional facts that, "[i]n 2014, GEICO assigned [Dillard] a 2014 Chevrolet Cruze, a compact car." Thus, based on GEICO's response to Dillard's claim in her opposition that the Cruze is a compact car, it appears there is a dispute regarding whether the Cruze is a compact or mid-sized car. Moreover, in support of her opposition to the motion for summary judgment, Dillard provided Chevrolet promotional materials that referred to the Cruze as a compact car. GEICO does not challenge this evidence on appeal and does not point to any indication in the record that these promotional materials were excluded by the trial court.[3] Because of the dispute as to the type of car (mid-sized or compact) that Dillard was driving when she requested an accommodation, whether Dillard

---

[3] GEICO did dispute that the promotional material "self-identifies" the Cruze as a compact car. In doing so, GEICO makes several objections to the evidence but does not indicate in this appeal that the court ruled on those objections. Nor does GEICO raise those same objections in the instant appeal. Also, curiously, GEICO claims that whether the Cruze is a compact car is immaterial for purposes of its motion for summary judgment. Such an argument is inconsistent with some of GEICO's own statements of material fact.

produced a doctor's note saying that she needed a different car is a disputed, material fact. Consequently, summary judgment, as to Dillard's claim of failure to accommodate, was not warranted.

In addition, we conclude two additional issues of material fact are disputed regarding Dillard's cause of action for failure to provide a reasonable accommodation. These two facts are: (1) GEICO provided Dillard with a Ford Fusion in November 2018 as soon one became available; and (2) when Dillard requested a different vehicle in July 2017, GEICO did not have one available. As evidence that GEICO did not have a vehicle available for Dillard before November 2018, GEICO points to Bond's declaration and her deposition testimony. In her declaration, Bond asserts: "Based on Ms. Dillard's stated preference for a Ford Fusion, we provided her with this fleet vehicle in November 2018, as soon as one became available." This portion of Bond's declaration is a mere conclusion. There is no explanation how Bond, the director of human resources for GEICO, knew this fact to be true. In addition, Bond's statement does not show that no other cars were available for Dillard. At most, Bond's statement reads that a Ford Fusion was not available until November 2018. Although Dillard did mention a Fusion as a possible replacement for her Cruze, she asked for a different car in general, a mid-sized car. Thus, Bond's declaration does not prove that no other mid-sized cars were available for Dillard before November 2018.[4]

GEICO also relies on specific portions of Bond's deposition testimony to establish that no other cars were available for Dillard until November 2018.

---

[4] It is unclear in the record when Dillard received the Fusion. She states she did not receive that car until January 2019. GEICO, on the other hand, states that it provided Dillard with the Fusion in November 2018.

14

To this end, GEICO cites to the following exchange between Bond and Dillard's attorney during Bond's deposition:

"Q.    Wasn't it true that what she was asking for was a vehicle with a different lumbar support system in the seat?

"A.    As I've said several times, I don't recall her specifically asking me for a car.  If she did, I don't remember that.  But it really wouldn't matter, as we didn't have one available at that time.

"[¶] . . . [¶]

"[Q.]   Did you have any discussions with Manny Campos about providing a new, different fleet vehicle to Ms. Dillard?

"A.    I don't believe I have.  We didn't have any fleet vehicles available.

"Q.    Did you have any conversations with anyone at GEICO, including Ms. Dillard, about a new and different vehicle for Ms. Dillard?

"A.    As I mentioned earlier, she may have mentioned that to me.  I don't recall a conversation specific.

"Q.    And you can't recall any conversations with anyone else about providing a new and different vehicle to Ms. Dillard; is that true?

"A.    To recall . . . any conversations, no.  I do recall that there was not one available."

Although Bond testified that she did not recall Dillard asking for a car and she did not remember whether she talked to anyone at GEICO about finding a car for Dillard, later during her deposition she stated that she did speak to someone about that issue.  Bond testified as follows:

"Q.    Did you speak with anyone at GEICO about providing a new fleet vehicle for Ms. Dillard?

15

"A.     Yes.

"Q.     Who?

"A.     Karina Sanchez.

"Q.     What is her position?

"A.     She is a fleet coordinator.

"Q.     When did you speak with her?

"A.     I asked her to keep a lookout for when one became available to give it to [Dillard], and she did in November of 2018.

"Q.     She gave [Dillard] a new vehicle?

"A.     She did."

Despite the contradictory nature of Bond's testimony,[5] later she apparently reiterated that no other car was available for Dillard until November 2018:

"Q.     Is it your testimony that there were no fleet vehicles from  July 2017 through November of 2018?

"A.     Yes.  It is my testimony that she got the first one that was available.

So, GEICO maintains that Bond's declaration and deposition testimony establish that there were no cars available for Dillard from the time she requested one until November 2018 when she was provided one.[6]  Putting aside the conclusory and sometimes contradictory nature of this evidence,

---

[5]     It might be that Bond's deposition testimony, as a whole, was not as contradictory as it appears in the excerpts provided in the record.  That said, we must address the issues on the record before us, not what might be.

[6]     Again, it is unclear in the record whether GEICO provided Dillard with a different car in November 2018 or January 2019.

16

even if we agree that it supports GEICO's assertions of fact, on the record before us, we determine that Dillard produced sufficient evidence to create a dispute as to whether a car was available before November 2018.

In Dillard's declaration, she states that she knew one of her subordinates relinquished her GEICO fleet vehicle, which was a Ford Fusion, in June 2017, a month before she requested an accommodation for her back condition. She also stated that the particular Fusion that was relinquished "stayed unused for months in a GEICO auto body shop parking lot."

GEICO challenges Dillard's evidence by focusing on one line in her declaration where she states that she believed a car swap would be "easy." Yet, Dillard's belief that a car swap would be easy is not important for purposes of opposing the motion for summary judgment. Instead, she offered evidence that supports her claim a car was available to swap before GEICO actually provided her with a car. GEICO claims Dillard's evidence "shows nothing" because she "does not explain whether the car was in the GEICO body shop being repaired or having mechanical issues (and therefore not drivable), or whether it was sitting there because it had already been reassigned to someone else."

We disagree that, for purposes of opposing a motion for summary judgment, Dillard had to explain why the car was parked at the GEICO body shop. Dillard provided evidence that a Ford Fusion was parked at a GEICO body shop "unused for months." We must consider that evidence in a light most favorable to the opposition and draw reasonable inferences from it. (See *Aguilar, supra*, 25 Cal.4th at p. 843.) Moreover, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) If the Fusion was parked in a

17

GEICO parking lot for months, it is reasonable to infer that it was not reassigned to someone else. Also, because it remained in the parking lot and was not being worked on, it could be inferred that the car was not in need of repair and was available for Dillard.

In addition, we observe it is somewhat ironic that GEICO is challenging the lack of foundation of Dillard's evidence that a car was available for her use. GEICO merely provided the conclusory testimony of Bond that GEICO had no cars available for Dillard until November 2018. Bond did not explain how she knew there were no vehicles available. Moreover, she contradicted herself during deposition regarding her discussions with GEICO employees about the availability of another vehicle. Again, we are puzzled by GEICO's lack of evidence on this point. Rather than simply offering a conclusion that no cars were available, GEICO could have put its business records into evidence, properly authenticated, detailing that no cars were available. Because Dillard identified a specific car left by her subordinate at a certain time, presumably GEICO could have offered evidence that the specific car was under repair or reassigned. Yet, GEICO did not. It merely offered the bald assertion that no cars were available. As such, we conclude Dillard did enough to create a triable issue of fact by referring to a specific car that sat unused for month.

Also, we note that GEICO does not address two other pieces of evidence Dillard offered to show a car was available before November 2018. The first piece of evidence is her declaration that her manager had swapped his Ford Fusion for a different car in June 2018, implying that Fusion might have been available at that time as well. And Dillard provided evidence that when she asked Bond about obtaining a different car in late November or early December 2017, Bond told her that Phil Gallimore, GEICO's auto damage

18

director, did not approve the vehicle change. Bond said nothing about a car not being available.

For these reasons, the trial court erred in finding a triable issue of material fact did not exist regarding whether a car was available for Dillard before November 2018.

### C. Failure to Engage in the Interactive Process

Dillard contends that the trial court erred by granting summary judgment on the failure to engage in the interactive process cause of action. We agree.

FEHA prohibits employers from failing "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation." (§ 12940, subd. (n).) "Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.' [Citation.] 'Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information[,] which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1014 (*Scotch*).) Thus, " 'the employer cannot prevail on summary judgment . . . unless it establishes through undisputed facts that . . . the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.' " (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 598 (*Soria*).)

19

Here, GEICO offered the same undisputed material facts supporting its claim that summary judgment was appropriate as to Dillard's failure to engage in the interactive process that it offered in support of its motion concerning the failure to accommodate claim. As we discussed *ante*, at least three of those facts are disputed, making summary judgment improper.

In addition, GEICO claims summary judgment was warranted as to the cause of action for failure to engage in the interactive process because Dillard did not participate in the interactive process in good faith. To that end, GEICO offers the following material fact: Dillard demanded a new car as an accommodation and rejected all lumbar support options provided despite a new car not being medically recommended at the time. This fact is disputed.

As a threshold matter, GEICO appears to be adding a requirement to a failure to engage in the interactive process claim that does not exist. There is no requirement that Dillard could only request a specific accommodation (here, a car) if that particular accommodation was explicitly recommended by her doctor at the time she requested it. In the instant action, the first medical note Dillard provided to GEICO indicated that she "requires lumbar support while seated and ergonomic consideration as needed for her job duties." GEICO interpreted the phrase "lumbar support" to mean a type of furniture that provides extra support to the lumbar region to keep the spine aligned in its natural curvature and decreases stress and movement of the muscles in an improper way. However, a car that included built-in lumbar support certainly would be consistent with the first medical provider note.

In addition, contrary to GEICO's material fact, Dillard did not reject the first pillow GEICO provided. In fact, she drove with it for almost a month. Thus, on this issue alone, Dillard has provided sufficient evidence to

20

dispute GEICO's material fact, and summary judgment was not warranted as to the cause of action for failure to engage in the interactive process.

Moreover, on this record, it is clear that summary judgment was not appropriate on the failure to engage in the interactive process claim because GEICO did not establish, through undisputed facts, that it did everything in its power to find a reasonable accommodation but the interactive process broke down because Dillard failed to engage in discussion in good faith. (See *Soria*, *supra*, 5 Cal.App.5th at p. 598; *Scotch*, *supra*, 173 Cal.App.4th at p. 1014.) For example, after Dillard informed GEICO that the first pillow was not accommodating her back condition, Bond contacted Dillard and suggested a different pillow. In response, Dillard requested a different GEICO vehicle, but Bond rejected this request because Dillard's doctor's note did not specifically say that she needed a different fleet vehicle.

Bond then emailed Dillard a link to a different pillow. Dillard, concerned that a pillow would not work to accommodate her condition, conducted research and suggested to Bond that Dillard get evaluated by an independent, ergonomic specialist. Bond declined to pay for Dillard's selected specialist but, instead, tasked Moore to evaluate Dillard's ergonomic needs as well as the Cruze. Moore evaluated Dillard and produced a report, which included three new back support options.

Dillard informed Bond that she disagreed with parts of Moore's report, claiming it was inaccurate. She also provided a new doctor's note wherein the doctor suggested Dillard get a mid-sized car to accommodate her condition.[7] Dillard again requested a different car. Bond did not respond to

---

[7]    As we discussed *ante*, whether the Cruze is a mid-sized car is a disputed, material fact.

the second doctor's note or Dillard's accompanying request for a different car. In fact, Bond does not recall if she received Dillard's email with the second doctor's note.

Against this backdrop, we cannot determine, on a motion for summary judgment, that the interactive process broke down based on Dillard's refusal to participate in good faith. In fact, the evidence suggests that Dillard continued to participate in the interactive process and attempted to explain to Bond why she did not agree with Moore's evaluation. Although it is true that Dillard did not provide any specific feedback on the three lumbar pillows Moore suggested after her evaluation of Dillard, Dillard did comment on Moore's report, provided a second doctor's note, and again requested a different vehicle. We cannot say that Dillard's actions show a lack of good faith. Indeed, it may be that a fact finder could determine that Dillard was reasonable and participated in the interactive process in good faith while GEICO did not. Yet, such a dispute is not appropriate for resolution at the summary judgment stage. Rather, the record makes it clear that summary judgment was inappropriate because of the numerous disputed factual issues.

### D. Punitive Damages

Below, the trial court granted summary judgment as to all of Dillard's causes of action; thus, it concluded that Dillard's prayer for punitive damages was moot. Because the court did not rule on the merits of the punitive damages issue, Dillard requests we call for supplemental briefing under Code of Civil Procedure section 437c, subdivision (m)(2) to address the punitive damages issue. However, because we shall not grant summary judgment as to Dillard's claim for punitive damages, no further briefing is necessary.

Civil Code section 3294, subdivision (a) provides that punitive damages may be awarded "for the breach of an obligation not arising from contract,

22

where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Civil Code section 3294, subdivision (b) limits the liability of a corporation to acts ratified, authorized, or committed by a corporate officer, director, or managing agent. (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1151.)

In *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566-567 (*White*), the Supreme Court explained that managing agents are "those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." "[T]o demonstrate that an employee is a true managing agent under [Civil Code] section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." (*Id.* at p. 577.) More recently, the court clarified that "[w]hen we spoke in *White* about persons having 'discretionary authority over . . . corporate policy' (*White*, *supra*, 21 Cal.4th at p. 577), we were referring to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership. It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 714-715.)

" 'The scope of a corporate employee's discretion and authority under our [managing agent] test is therefore a question of fact for decision on a case-by-case basis.' ([*White*, *supra*, 21 Cal.4th] at p. 567.) If there exists a triable issue of fact regarding whether a corporate employee is a managing agent under the *White* test, that factual question must be determined by the trier of fact and not the court on a motion for summary adjudication. ([Code

23

Civ. Proc.,] § 437c, subds.(c), (f); *Aguilar*, *supra*, 25 Cal.4th at pp. 856-857; cf. *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 63.)"  (*Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 366 (*Davis*).)

In *Davis*, *supra*, 220 Cal.App.4th 358, the plaintiff sued her former employer for discrimination, harassment, and retaliation in violation of FEHA.  Her complaint alleged that the employer's actions were malicious and oppressive and were committed and/or ratified by the employer's managing agents, and it included a prayer for punitive damages.  (*Id.* at pp. 361-362.) The employer moved for summary adjudication of the punitive damages claim, asserting plaintiff could not recover punitive damages as a matter of law because no officer, director, or managing agent of the employer engaged in any oppressive, malicious, or fraudulent conduct against plaintiff.  The trial court granted the motion, and plaintiff appealed.  (*Id.* at pp. 362-363.)

This court reversed.  We observed that in support of summary adjudication, the employer submitted the declarations of the two employees about whom plaintiff complained.  Preedy, the manager of the project on which plaintiff had worked, stated in his declaration as follows:  " 'I am not an officer or a director of Kiewit.  As a Kiewit employee, I have never drafted corporate policy or had substantial discretionary authority over decisions that ultimately determine Kiewit's corporate policy.  The only role that I play with respect to Kiewit's anti-harassment and EEO [equal employment opportunity] policies is to ensure that they are followed on the job.' " Lochner, the company's EEO officer, submitted a similar declaration, as follows:  " 'As a Kiewit employee, I have never had substantial discretionary authority over decisions that ultimately determine Kiewit's corporate policy. I do not write or recommend implementation of any human resources policies and procedures.' " (*Davis*, *supra*, 220 Cal.App.4th at p. 367.)

24

We concluded that those declarations did not satisfy the employer's summary judgment burden to make a prima facie showing of the nonexistence of triable issues of material fact. We explained that Kiewit, "by simply restating the applicable legal standard under *White* for the determination of whether Preedy was its managing agent, did not satisfy its initial burden of production." (*Davis*, *supra*, 220 Cal.App.4th at p. 369.) We also noted that Preedy's declaration did not contain a sufficient description of his job duties and responsibilities and the nature and extent of his authority and discretion at the subject project (along with his exercise of that authority and discretion) "to support a reasonable inference that he did not '*exercise*[] *substantial discretionary authority over* [*significant*] *aspects of* [Kiewit's] *business*.' [Citation.]" (*Id.* at p. 370.) We reached a similar conclusion as to the declaration of Kiewit's EEO officer Lochner. (*Id.* at pp. 371-372.) Accordingly, we found the trial court erred in granting summary adjudication regarding the claim for punitive damages. (*Id.* at p. 373.)

Here, the two declarations on which GEICO relies from Bond and Gallimore read much like the declarations we rejected in *Davis*. Bond declared, in part: "I do not exercise substantial independent authority in the GEICO corporate decision-making process such that my decisions ultimately determine any formal, corporate-wide policies for GEICO. I am not responsible for any operations or personnel outside of the Human Resources Department for my region. I lack authority to modify or develop any corporate policies applicable to GEICO in any way."

Gallimore, a Regional Director of GEICO's Auto Damage Department, similarly declared: "I do not exercise substantial independent authority in the GEICO corporate decision-making process such that my decisions ultimately determine any formal, corporate-wide policies for GEICO. I am

25

not responsible for any operations or personnel outside of the Auto Damage Department for my region. I lack authority to modify or develop any corporate policies applicable to GEICO in any way."

Like Preedy's declaration in *Davis,* the declarations of Bond and Gallimore do little more than restate the legal standard under *White*. The declarations do not contain sufficient descriptions of the individuals' job duties and responsibilities to support a reasonable inference that the declarants do not have " 'substantial discretionary authority over [significant] aspects of [GEICO's] business.' " (See *Davis*, *supra*, 220 Cal.App.4th at pp. 369-370.)

Yet, even if we were to assume that Bond's and Gallimore's declarations passed muster under *White* and *Davis*, there remain sufficient disputed material facts on the record before us that make summary judgment on the punitive damages claim unwarranted. In determining whether an individual is a managing agent for purposes of establishing liability for punitive damages, "[t]he key inquiry . . . concerns the employee's authority to change or establish corporate policy." (*CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1273.) Here, GEICO has stated that its policy is to provide a different fleet vehicle in response to a request for accommodation only if there is medical documentation expressly supporting such a request. Dillard produced evidence that she provided such a doctor's note to Bond in November or December 2017. In addition, Dillard stated that Bond informed her that Gallimore had denied her request for a different fleet vehicle. If Bond and/or Gallimore were aware of the doctor's note stating that Dillard needed a different vehicle and either Bond or Gallimore refused to provide a different vehicle consistent with GEICO's policy then such action could suggest that Bond or Gallimore exercised her or his authority and discretion

not to comply with company policy, resulting in the ad hoc formulation of corporate policy. (See *Davis*, *supra*, 220 Cal.App.4th at p. 373.) We therefore conclude there is a triable issue of fact regarding whether Bond or Gallimore was a managing agent of GEICO.

We also reject GEICO's cursory argument that its "decision to accommodate Dillard by offering lumbar support options is not evidence [of] a willful act of oppression, fraud, or malice." "Malice" is defined in Civil Code section 3294, subdivision (c)(1) as conduct, "which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) "The adjective 'despicable' used in [Civil Code] section 3294 refers to 'circumstances that are "base," "vile," or "contemptible." ' (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725.)" (*Cloud v. Casey* (1999) 76 Cal.App.4th 895, 912.)

Here, GEICO's argument that punitive damages are not warranted as a matter of law is based entirely on its claim that it acted in a reasonable manner in providing accommodations to Dillard. As we discussed *ante*, there are factual disputes regarding whether GEICO acted reasonably. Although it might not be that GEICO's conduct rose to the level of malice or oppression even if Dillard's version of events is ultimately accepted by the trier of fact, we are unwillingly to conclude, on the record before us, that punitive damages are prohibited as a matter of law.

## DISPOSITION

The judgment is reversed. The matter is remanded to the superior court with instructions to enter an order denying GEICO's motion for

27

summary judgment as to the fifth cause of action (failure to accommodate; § 12940, subd. (m)), the sixth cause of action (failure to engage in the interactive process; § 12940, subd. (n)), and the claim for punitive damages. Dillard is entitled to her costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.