Filed 5/15/25  Montes v. SPS Technologies CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JAVIER MONTES,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SPS TECHNOLOGIES LLC et al.,<br><br>     Defendants and Respondents. | B334509<br><br>(Los Angeles County Super. Ct. No. 21STCV47068) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Reversed with directions.

    Law Offices of Allison M. Schulman and Allison M. Schulman for Plaintiff and Appellant.

    Fisher & Phillips, Caroline S. Scala, Regina A. Petty, and Megan E. Walker for Defendants and Respondents SPS Technologies LLC  and Hector Pelayo.

# INTRODUCTION

Javier Montes, a maintenance mechanic at SPS Technologies LLC dba PB Fasteners (PB Fasteners), went on medical leave after he was injured at work. When Montes asked to return to work with physical restrictions 14 months later, PB Fasteners terminated his employment, stating that Montes's physical restrictions prevented him from performing the maintenance mechanic job and that PB Fasteners did not have another vacant position Montes could perform.

Montes filed this action against PB Fasteners and one of Montes's supervisors, Hector Pelayo, for disability discrimination and harassment under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)) and related causes of action.[1] The trial court granted a motion by PB Fasteners and Pelayo for summary judgment. We reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Pelayo Harasses Montes After Montes Returns from Medical Leave*

In 1993 Montes began working for PB Fasteners, a manufacturer of aerospace structural nuts and bolts, or fasteners. In 2002 he became a maintenance mechanic. Montes repaired equipment, including grinding machines, hydraulic pumps, ovens, 100-ton presses, and computerized numerical control machines. In 2008 Hector Pelayo became Montes's supervisor.

---

[1] Undesignated statutory references are to the Government Code.

In August 2018 Montes had a heart attack, was hospitalized, and went on medical leave for four months. When Montes returned to work he requested temporary accommodations: no bending, going up stairs, or lifting more than 15 pounds. PB Fasteners temporarily assigned Montes to less physically demanding work in the shipping department, where he could package bolts while seated.

While Montes worked in the shipping department and reported to the shipping supervisor, Pelayo (who at the time was not Montes's supervisor) told Montes: "Man, you're old. You've really gone to hell." Pelayo called Montes an "asshole" and an "idiot" for requiring accommodations and insinuated Montes was faking the need for the accommodations. Pelayo also demanded to see the medication Montes was taking. Pelayo told Montes to "stop fucking around like a little bitch and go back to work" in the maintenance department. Pelayo asked another employee to tell Montes "to stop talking like an idiot and like a little bitch and to get back to doing normal work," to "stop messing around like a dummy," and that Pelayo "needed [him] working in the ovens." When Montes said the human resources department instructed him to work in the shipping department, Pelayo yelled at Montes and told him to do what Pelayo said, not what human resources said.

Montes went to speak with human resources administrator Sandra Calderon. While they were talking, Pelayo approached and said, "What the fuck are you doing over here? Why haven't you gone where I told you to? You know what, go to hell. I don't want you anymore." Montes asked Calderon: "Do you see how he treats me in front of you?" Calderon said, "I never knew that he treated you that way. Why haven't you come by before?" Montes

3

said, "I never come by, because everyone that does come by gets fired.  And I need this job.  That's why I didn't want to come to report this, this man.  He always treats [me] like this, like trash, he humiliates me.  How can I do my work with love, since I'm being mentally and emotionally destroyed?"[2]

A few weeks later, while Montes was still assigned to the shipping department, Pelayo began instructing him to do maintenance work.  Pelayo told Montes to clean restrooms while the janitor was on medical leave.  After one week Montes told Pelayo the janitorial work was hurting him.  Pelayo said, "Well, what the fuck do you want to do?  If you don't want to do anything, just go home."  Montes said, "I came so that I could do whatever I'm able to do.  Whatever is allowed in the medical report.  I'm reporting to you that I'm getting hurt."  After the janitor returned from leave, Pelayo told Montes and the janitor to clean the restrooms and polish the floors with a heavy electric cleaning machine.  Montes said, "I can't use that heavy machine. . . .  I can't do pushing or pulling per the medical recommendations."  Pelayo said, "Well, what the fuck are you going to do?  What the fuck can you do?  You tell me what are you doing here?  You tell me."  Montes tried to push the machine, but he felt he was getting hurt.  He told Pelayo, "You're pushing me to do things I cannot do."  Pelayo said, "Well, do whatever you want," and left.  When Montes told Pelayo that he was struggling physically and that the work was even more physically challenging than the maintenance mechanic job, Pelayo mocked Montes and called him "lazy."

---

[2]     Calderon denied Montes complained to her about Pelayo.

On another occasion Pelayo made Montes come to Pelayo's upstairs office, even though Montes said he could not climb stairs. Montes had to slowly go up the stairs, backward. When he got to Pelayo's office, Montes said, "You know I cannot go up the stairs. You know what sacrifice it took me to get up here?" Pelayo said, "Well, damn, if you can't do anything, then just go home." Montes did not complain about Pelayo to human resources because he "didn't think that it would get that far" and because, Montes said, "the people that went to complain, they would get fired and I was afraid that that would happen to me."

B. *Montes Goes on a Second Medical Leave*

In July 2019 an electrician asked Montes to repair a clutching machine, which Montes said he could not do because it was too high. The electrician said Montes could use a lift and a stool, and the electrician's supervisor asked Montes to "do it as a favor, just do it slowly, carefully." Montes agreed. While he was fixing the machine, Montes injured his foot. He returned to work for one or two days, but was placed on medical leave starting July 15, 2019. In July 2019 Montes also saw his doctor for chest pain, and the doctor ordered a cardiac procedure.

In October 2019 Armand Contreras became human resources director at PB Fasteners. In the spring of 2020 Contreras discovered Montes and four other employees had been on medical leave for an extended time. Contreras began to enforce PB Fasteners' policy of providing a maximum of 16 weeks of unpaid leave. On June 15, 2020, after Montes had been on leave for 11 months, Contreras sent Montes a letter stating: "At this point, we cannot continue providing approved leave of absence under our company policy." Contreras asked Montes to

5

have his doctor report whether Montes would be able to return to work in July and perform his duties with or without accommodations, and if not, when the doctor anticipated Montes would be able to return to work. On June 24, 2020 Montes called Contreras and said he was not ready to return to work and would provide the information Contreras requested after a doctor's appointment in July. After seeing his doctor Montes gave PB Fasteners a work status report stating he was off work from July 1, 2020 to August 16, 2020.

On August 13, 2020 Contreras sent Montes another letter asking Montes to have his doctor respond to Contreras's questions about returning to work. Contreras repeated that PB Fasteners could not continue to give Montes a leave of absence and asked Montes to "provide the information requested so that the Company can decide on next steps." Montes submitted a work status report stating he was off work from August 14, 2020 through September 11, 2020.

C. *Montes Asks To Return to Work with Physical Restrictions, and PB Fasteners Terminates His Employment*

Montes submitted a work status report dated September 1, 2020. The report stated he could return to "modified activity at work" from September 16, 2020 to October 1, 2020 with the following restrictions: (1) stand up to 50 percent of shift; (2) walk up to 50 percent of shift; (3) bend at the waist up to 25 percent of shift; (4) twist torso/spine up to 25 percent of shift; (5) no climbing ladders; (6) no using scaffolds or working at heights; and (7) no lifting, carrying, pushing, or pulling more than 20 pounds.

On September 18, 2020 Contreras sent Montes a letter stating: "It was good to talk with you on 9/14 regarding the work status report . . . . Based on feedback from management and our discussion, we are in agreement that you cannot perform [your] regular duties as a Maintenance Technician based on the allowed modified activity. My understanding is that your foot injury prevents you from standing or walking for a prolonged period of time and there is no plan for surgery or therapy that will improve this condition." Contreras listed the restrictions from Montes's September 1, 2020 work status report and said, "we do not have open positions available that would enable us to provide accommodations at work that would meet your work restrictions. . . . [¶] Since there is no indication that you will be able to return to your regular duties in the near future with or without work accommodations, we cannot continue providing approved leave of absence as the leave is essentially indefinite and unreasonable at this point. . . . [¶] Therefore, we have decided to terminate your employment effective September 18, 2020."[3]

---

[3] Montes testified to a different sequence of events. According to Montes, on September 15, 2020 he called Contreras and said he was ready to return to work, and Contreras told him to meet outside the office the next morning. The next day Montes handed Contreras the September 1, 2020 work status report. Contreras quickly glanced at it and said he and Pelayo had decided there was no more work for Montes.

D.    *Montes Files This Action, and the Trial Court Grants PB Fasteners and Pelayo's Motion for Summary Judgment*

Montes filed this action against PB Fasteners and Pelayo in December 2021.  In his operative first amended complaint Montes asserted causes of action against PB Fasteners under FEHA for discrimination, harassment, retaliation, failure to provide reasonable accommodation, failure to engage in a good faith interactive process, and failure to prevent discrimination.  He also asserted causes of action for declaratory relief and wrongful termination in violation of public policy.  Montes asserted a single cause of action against Pelayo for disability harassment.

PB Fasteners and Pelayo moved for summary judgment or, in the alternative, for summary adjudication on each cause of action and on Montes's claim for punitive damages.  Montes filed an ex parte application to continue the hearing on the motion on the grounds that PB Fasteners had not made plant manager Zach Cheplak available for deposition and that PB Fasteners had not adequately searched for documents responsive to Montes's discovery requests.  The trial court denied the ex parte application.

At the June 1, 2023 hearing on the motion for summary judgment the trial court continued the hearing for three months to allow additional discovery.  The trial court's minute order, however, stated the court was "inclined to grant the motion."  The trial court concluded PB Fasteners reasonably accommodated Montes and engaged in the interactive process in good faith.  The court stated PB Fasteners showed that, because of Montes's physical restrictions, he could not perform the regular duties of a

8

maintenance mechanic and that there was no open position where PB Fasteners could accommodate Montes. The court stated that Montes relied primarily on his declaration to show he could perform his job and that some portions of the declaration contradicted his deposition testimony about his work duties.[4] The court also stated Montes's declaration was in English, but Montes said he was a monolingual Spanish speaker, "another reason the declaration is not reliable evidence and cannot contradict the deposition testimony, where a Spanish interpreter was present."[5]

The trial court also stated PB Fasteners met its burden to show Pelayo's conduct did not constitute harassment. The court said Pelayo's comments did "not specifically refer to his disability" and were too "occasional and sporadic" to show a "concerted pattern." The trial court concluded PB Fasteners did not discriminate or retaliate against Montes because his inability to perform the essential functions of his job was a legitimate, nondiscriminatory reason for terminating his employment. The trial court also concluded PB Fasteners was entitled to summary adjudication on Montes's remaining causes of action for failure to prevent discrimination and retaliation, wrongful termination in violation of public policy, and declaratory judgment. Finally, the

---

[4] The trial court also sustained three of PB Fasteners' objections to Montes's declaration, rulings Montes does not challenge. We disregard Montes's citations in his opening brief to the excluded evidence.

[5] At the continued hearing Montes submitted the declaration of an interpreter who stated that she interpreted the English declaration into Spanish and that Montes confirmed he "agreed with the content at the time that he signed it."

9

court stated PB Fasteners was not liable for punitive damages because there was no triable issue regarding oppression, fraud, or malice and because Contreras and Pelayo were not managing agents with substantial discretionary authority over corporate policy decisions.

After Montes took Cheplak's deposition, the parties submitted additional briefing. At the continued hearing on September 21, 2023 the trial court concluded Montes's "additional evidence from Cheplak's deposition does not create a triable issue of fact." The court incorporated and adopted its analysis from the June 1, 2023 order and granted the motion by PB Fasteners and Pelayo for summary judgment. The court entered judgment for PB Fasteners and Pelayo, and Montes timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"'A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."'" (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Civ. Proc. Code, § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "'When the moving party is a defendant, it must show that the plaintiff cannot establish at least one element of the cause of action.'" (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 683; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) Once the defendant carries its initial

10

burden, "the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action. [Citations.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof' at trial." (*Esplanade Productions, Inc. v. The Walt Disney Co.* (2023) 93 Cal.App.5th 793, 805; see *Aguilar*, at p. 850.)

"'On appeal from a summary judgment ruling, we review the record de novo to determine whether triable issues of material fact exist.'" (*Wawrzenski v. United Airlines, Inc.*, *supra*, 106 Cal.App.5th at p. 684; see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) "'"[W]e take the facts from the record that was before the trial court when it ruled on [the] motion."'" (*Wawrzenski*, at p. 684; see *Hampton*, at p. 347.) "'"We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Wawrzenski*, at p. 684; see *Hampton*, at p. 347.) "'"We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale."'" (*Wawrzenski*, at p. 684; see *Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 161.)

> B. *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Cause of Action for Disability Discrimination*

FEHA "'prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees

11

because of their physical disabilities.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 714; see § 12940, subd. (a).) To prevail on a cause of action for disability discrimination under FEHA, the plaintiff must show he or she "(1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378; see *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 37-38.)

PB Fasteners argues Montes could not establish the second element of the cause of action—that he was qualified to do his job. A plaintiff is qualified to do his or her job if "he or she can perform the essential functions of the job with or without reasonable accommodation." (*Green v. State of California* (2007) 42 Cal.4th 254, 260; accord, *Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 744; see *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 962 (*Nadaf-Rahrov*) ["an employee bears the burden of showing . . . he or she could perform the essential functions of the job with or without accommodation"].) "'Essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. 'Essential functions' does not include the marginal functions of the position." (§ 12926, subd. (f); see *Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 373.) "'Marginal functions' of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." (Cal. Code Regs., tit. 2; § 11065, subd. (e)(3); see *Nealy*, at p. 373.)

12

PB Fasteners relied primarily on Contreras's deposition testimony Montes could not perform the essential functions of his job. Contreras testified a maintenance mechanic had to move around a piece of equipment and walk to and from an equipment cart; "bend, stoop, and reach into difficult places" while repairing equipment; and twist his torso or spine. Contreras testified the job required standing and walking more than 50 percent of the time, bending more than 25 percent of the time, twisting the torso or spine more than 25 percent of the time, and "occasionally" climbing a ladder to work on a machine. In addition, Cheplak testified a maintenance technician had to lift between 20 and 35 pounds multiple times every day. With this evidence, PB Fasteners met its initial burden on summary judgment to show Montes's physical restrictions on standing and walking (no more than 50 percent of the time), bending at the waist and twisting his torso or spine (no more than 25 percent of the time), and climbing a ladder and lifting more than 20 pounds (not at all) prevented him from performing the essential functions of his job. (See *Miller v. Department of Corrections & Rehabilitation* (2024) 105 Cal.App.5th 261, 276 [employer met its initial burden on summary adjudication on a cause of action for disability discrimination by presenting expert medical testimony and the plaintiff's testimony her "permanent restrictions rendered her incapable of performing the essential duties of a correctional officer"].)

Montes, however, disputed PB Fasteners' evidence about how much standing, walking, bending, and twisting the job required. In his declaration Montes stated he spent an average of 30 percent of his shift standing, 20 percent walking, 5 percent bending at the waist, and 5 percent twisting the spine, all within

13

his restrictions. As for the tasks Montes could not do, Montes said he had to climb a ladder, work at heights, and lift, carry, push, or pull more than 20 pounds "approximately once per month." Montes also stated "the repairs that required climbing ladders/working at height were basic fixes that several employees were trained on and able to handle." This evidence created a triable issue of material fact regarding whether the tasks Montes could not perform were essential functions. (See § 12926, subd. (f)(2)(C) [evidence whether a function is essential includes the "amount of time spent on the job performing the function"]; cf. § 12926, subd. (f)(1) [a function may be essential because of the "limited number of employees available" who can perform the function or because the function is "highly specialized"].)[6]

Even if climbing a ladder or lifting more than 20 pounds were an essential function, Montes argues, PB Fasteners could have reasonably accommodated him by assigning another employee to perform those tasks. Under FEHA "'reasonable

---

[6] PB Fasteners dismisses Montes's declaration as "self-serving" and "conclusory," and the trial court agreed with PB Fasteners some portions of Montes's declaration "contradict[ed] his deposition testimony about his work duties." PB Fasteners does not, however, point to any specific contradiction between his deposition testimony and his declaration regarding Montes's work duties. In its statement of undisputed facts, PB Fasteners cited Montes's testimony about two incidents: first, that when he returned from his first medical leave and could not squat, he had to lie on his back and his stomach to fix a machine; and second, that he injured his foot when he climbed on a lift to repair a clutching machine. None of this testimony contradicted Montes's statements in his declaration about how frequently he had to bend, climb, or do other tasks.

14

accommodation'" means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 974; accord, *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 597; *Miller v. Department of Corrections & Rehabilitation, supra,* 105 Cal.App.5th at p. 280.)  Reasonable accommodations may include "reallocation or redistribution of non-essential job functions in a job with multiple responsibilities."  (Cal. Code Regs., tit. 2, § 11065, subd. (p)(2)(E).)  However, "FEHA does not require employers to eliminate essential functions of a job to accommodate a disabled employee."  (*Atkins v. City of Los Angeles, supra,* 8 Cal.App.5th at p. 719; see *Wentworth,* at p. 598 ["'FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions.'"]; *Furtado v. State Personnel Bd., supra,* 212 Cal.App.4th at p. 753 [waiving an essential function requirement would mean the plaintiff "would not have to demonstrate that he is a 'qualified individual' within the meaning of FEHA"].)  Nor does FEHA require an accommodation that would "produce undue hardship" to the employer's business by "requiring significant difficulty or expense."  (§§ 12940, subd. (m)(1); 12926, subd. (u); see *Atkins,* at p. 733.)  "The reasonableness of an accommodation generally is a question of fact."  (*Nealy v. City of Santa Monica, supra,* 234 Cal.App.4th at p. 374.)

PB Fasteners argues it was not "obligated to create a new helper position to accommodate" Montes.  It is true an "employer is not required to create a new position . . . to accommodate disabled employees."  (*Zamora v. Security Industry Specialists,*

*Inc.*, *supra*, 71 Cal.App.5th at p. 42; see *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1224 ["California law is emphatic that an employer has no affirmative duty to create a new position to accommodate a disabled employee"].) However, Montes submitted evidence that he frequently performed repairs with another maintenance mechanic and that it would not create undue hardship if another employee did the climbing and heavy lifting Montes could not do. In his declaration Montes stated that "repairs often required more than one person to complete" and that he "worked with another mechanic on a repair more than half of [his] time." Montes also submitted the deposition testimony of another PB Fasteners maintenance mechanic, Christian Gallardo, who stated that many tasks required two people and that he needed another person to assist him 25 percent of the time every day. Contreras testified there were two maintenance mechanics working at PB Fasteners in September 2020. This evidence created a triable issue of material fact regarding whether PB Fasteners could have reasonably accommodated Montes by assigning a coworker, when needed, to perform the tasks Montes could not because of his work restrictions.

      C.    *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Causes of Action for Failure To Provide Reasonable Accommodations and Failure To Engage in an Interactive Process*

Section 12940, subdivision (m)(1), makes it an unlawful employment practice to "fail to make reasonable accommodation for the known physical or mental disability" of an employee. "'The essential elements of a failure to accommodate claim are:

16

(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 766; see *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)

Section 12940, subdivision (n), requires an employer "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." "'Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability.'" (*Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 379; see *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424.) "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions." (*Nealy*, at p. 379; see *Wilson v. County of Orange*, *supra*, 169 Cal.App.4th at p. 1195.) If an employee requests accommodation, the employer must grant it or "reject it after due consideration, and initiate discussion with . . . the employee regarding alternative accommodations." (Cal. Code Regs., tit. 2, § 11069, subd. (c)(1).) The employer must "identify potential accommodations and assess the effectiveness each would have . . . for the employee to perform the essential function of the position." (Cal. Code Regs., tit. 2, § 11069, subd. (c)(7).) An "employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable

17

accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263; accord, *Wentworth v. Regents of University of California, supra,* 105 Cal.App.5th at p. 599.)

PB Fasteners argues that Montes's physical restrictions prevented him from performing the maintenance mechanic job and that the company did not have a vacant position he could perform.[7] As discussed, however, Montes created a triable issue of material fact regarding whether PB Fasteners could have reasonably accommodated him in the maintenance mechanic position by reassigning tasks that required climbing and heavy lifting to another employee.

PB Fasteners also argues it "did engage in the interactive process and accommodated Mr. Montes to the extent it could." PB Fasteners states that, after Montes's injury in July 2019, PB Fasteners granted him a leave of absence, extended that leave of absence several times, and "reached out multiple times to identify his anticipated return date and restrictions." A leave of absence may be a reasonable accommodation. (*Zamora v. Security Industry Specialists, Inc., supra,* 71 Cal.App.5th at

---

[7] Because PB Fasteners had laid off nearly half its workforce due to the COVID-19 pandemic and had reduced demand from a major customer, there was no position available in the shipping department, the only place an employee could work while seated.

p. 41.)  However, the duty to discuss potential accommodations "is a continuing duty and the fact that the employer took some steps to identify a reasonable accommodation does not absolve the employer of liability for failure to engage in the interactive process if it is responsible for a later breakdown in the process." (*Ibid.*; see *Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 985.) After Montes submitted a report from his doctor stating he could return to work with restrictions on September 16, 2020, PB Fasteners communicated with Montes only once before terminating his employment—when Contreras and Montes spoke on September 14, 2020.  According to Contreras, they discussed "whether [Montes] was ever gonna be able to come back to work, . . . and he admitted and agreed . . . that he didn't feel that he was gonna be able to return to work."  Montes confirmed he spoke with Contreras, but disputed Contreras's assertion Montes agreed he could not return to work.  Montes testified Contreras told him "he was from HR and they wanted to see me to reach an agreement.  But I didn't pay attention to that conversation, because I asked myself, 'what agreement?'"  PB Fasteners presented no evidence that, between the time Montes was cleared to return to work and the time PB Fasteners terminated his employment, PB Fasteners had any discussions with Montes about how his physical restrictions affected his ability to do his job or what accommodations would allow Montes to return to work.  (See Cal. Code Regs., tit. 2, § 11069, subd. (c)(1) [if the employer rejects the employee's requested accommodation, the employer must discuss alternative accommodations with the employee].)

 *Nadaf-Rahrov, supra*, 166 Cal.App.4th 952 is instructive. In that case the plaintiff developed pain in multiple joints,

19

leaving her unable to perform her job as a clothes fitter in a department store. (*Id.* at pp. 957-958.) The plaintiff took a medical leave, which was extended several times. (*Id.* at p. 958.) After the plaintiff had been on leave for seven months, her doctor told her employer "she may be able to return to work [seven weeks later] but not in her previous position." (*Id.* at p. 959.) Two weeks later the employer terminated the plaintiff's employment. (*Ibid.*) The court in *Nadaf-Rahrov* reversed the trial court's order granting the employer's motion for summary judgment. (*Id.* at p. 957.) The court held that, though in the first few months of the employee's leave the employer "engaged in a good faith interactive process to identify a reasonable accommodation" (*id.* at p. 985), a "jury could find that . . . it was unreasonable for [the employer] to determine unilaterally that [the employee] could not perform any available vacant position and would not be able to do so in the foreseeable future" and that the employer "needed to engage in further discussion with [the employee] before concluding that no reasonable accommodation was possible." (*Id.* at p. 989.) Same here: A jury could find that PB Fasteners could have reasonably accommodated Montes and that PB Fasteners did not fully engage in the interactive process to determine whether there were reasonable accommodations for Montes. The trial court erred in granting the motion for summary adjudication on Montes's causes of action under section 12940, subdivisions (m) and (n).[8]

---

[8] In *Nadaf-Rahrov, supra,* 166 Cal.App.4th 952 the plaintiff conceded she could not perform the essential functions of her regular job, but argued that her employer should have reassigned her to another job (*id.* at p. 968) and that "an employer's duty to

D.    *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Cause of Action for Harassment*

"It is an unlawful employment practice for an employer to 'harass' an employee based on membership in a protected class" (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 626), including "because of . . . physical disability" (§ 12940, subd. (j)(1)). "Harassment includes '[v]erbal harassment' such as 'epithets, derogatory comments or slurs on a basis enumerated in [FEHA].'" (*Bailey*, at p. 627; see Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A).) Harassment "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (*Reno v. Baird* (1998) 18 Cal.4th 640, 645-646; accord, *Lopez v. Routt* (2017) 17 Cal.App.5th 1006, 1017.) "Hostile work environment harassment is a type of harassment that ""has the purpose or effect of either interfering with the work performance of an employee, or creating an intimidating workplace."""" (*Wawrzenski v. United Airlines, Inc.*, *supra*, 106 Cal.App.5th at p. 692.) "'FEHA makes the employer strictly liable for harassment by a supervisor.'" (*Wawrzenski*, at

_____

accommodate a disabled employee by reassigning him or her to a vacant position is not per se limited to vacant positions in the same workplace where the employee originally worked" (*id.* at p. 970). Because we conclude Montes created a triable issue of material fact regarding whether he could perform the maintenance mechanic job in his usual work location, we do not reach his argument PB Fasteners should have considered whether it could accommodate him by reassigning him to a position in one of its other facilities.

21

p. 694; see *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 737.)

To prevail on a cause of action for hostile work environment under FEHA, an employee must show he or she was "subjected to 'offensive comments or other abusive conduct' that is (1) based on a 'protected characteristic' (here, a claimed disability) and (2) 'sufficiently severe or pervasive as to alter the conditions of [his] employment.'" (*Doe v. Department of Corrections & Rehabilitation, supra*, 43 Cal.App.5th at p. 736; see *Bailey v. San Francisco Dist. Attorney's Office, supra*, 16 Cal.5th at p. 627.) "Whether a work environment is reasonably perceived as hostile or abusive . . . "'. . . must be evaluated in light of the totality of the circumstances,'" including ""'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"" (*Bailey*, at p. 628; see *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462; *Doe*, at p. 736.) "A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." (§ 12923, subd. (b); see *Wawrzenski v. United Airlines, Inc., supra*, 106 Cal.App.5th at p. 693.)

"The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." (*Bailey v. San Francisco Dist. Attorney's Office, supra*, 16 Cal.5th at p. 629; see *Miller v. Department of Corrections, supra*, 36 Cal.4th at p. 462; *Cornell v. Berkeley Tennis Club*

22

(2017) 18 Cal.App.5th 908, 940.) "Harassment cases are rarely appropriate for disposition on summary judgment," and "hostile working environment cases involve issues 'not determinable on paper.'" (§ 12923, subds. (b) & (e); see *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 286 ["many employment cases present issues of intent, and motive, and hostile working environment, issues not determinable on paper"].)

Montes submitted evidence that, after he returned from his first medical leave in December 2018 and was assigned to less physically demanding work in the shipping department, Pelayo repeatedly made negative comments about Montes's physical condition, referred to Montes using derogatory terms, and insulted him for not returning to the maintenance department. For example, as stated Pelayo told Montes he was "old" and had "gone to hell," told him to "stop fucking around like a little bitch and go back to work," and said Montes should "get back to doing normal work." When Montes complained to Pelayo the tasks he had assigned Montes violated his physical restrictions, Pelayo said "what the fuck are you going to do?" and "what are you doing here?" and called Montes "lazy." Montes also testified Pelayo made him go upstairs to Pelayo's office, even though Montes told Pelayo he could not climb stairs. Taken together and viewed in the light most favorable to, and drawing all inferences in favor of, Montes (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864), this evidence could allow a reasonable jury to conclude PB Fasteners created an environment that was intolerable to Montes and to a reasonable person with a disability. (See *Cornell v. Berkeley Tennis Club, supra*, 18 Cal.App.5th at p. 941 [trial court erred in granting a motion for summary adjudication on a harassment cause of action where

23

the supervisor of an obese employee ordered clothing that was much too small for her, reported her for resisting the uniform policy, and made "comments communicating an offensive weight-based message"].)

PB Fasteners argues that Pelayo's comments were "personnel actions," such as "directions" and "performance feedback," and that the comments were not "about a particular disability" or "tied to disability." Perhaps, in another context, some of Pelayo's comments could be viewed as performance feedback; for example, where a supervisor says to an employee who was taking an unreasonably long coffee break, "Stop being lazy; I need you there already." But when Pelayo said the same words to Montes, who was temporarily assigned to the shipping department to accommodate his physical restrictions, Montes could reasonably interpret Pelayo's statements as disparaging Montes's disability, his physical restrictions, and his accommodations. (See *Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 941 [manager's "comments 'must be viewed in context with [the employer's] other [allegedly] harassing conduct'"]; see also *Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 462 ["Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."].) Moreover, Pelayo's comments to Montes could not have been personnel actions necessary to Pelayo's job as Montes's supervisor because they occurred, according to Montes, when Montes was temporarily assigned to the shipping department and Pelayo was not supervising him. (See *Reno v. Baird*, *supra*, 18 Cal.4th at p. 645

24

["harassment consists of a type of conduct not necessary for performance of a supervisory job'"]; cf. *Doe v. Department of Corrections & Rehabilitation*, *supra*, 43 Cal.App.5th at p. 737 [supervisor's actions in assigning work and enforcing workplace rules were not harassment because each action "involved a personnel decision by [the supervisor] within the scope of his duties as [the plaintiff's] supervisor"].)

PB Fasteners also argues Pelayo's comments were not sufficiently severe or pervasive to constitute harassment. "Before 2019 the 'severe or pervasive' requirement 'was quite a high bar for plaintiffs to clear, even in the context of a motion for summary judgment.'" (*Wawrzenski v. United Airlines, Inc.*, *supra*, 106 Cal.App.5th at p. 693; see *Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 878.) "Effective January 1, 2019, however, the Legislature added section 12923, which 'clarified existing law' to provide 'that "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment."'" (*Wawrzenski*, at p. 693; see § 12923, subd. (b); *Beltran*, at p. 878.) "Section 12923 also 'clarified that a hostile work environment exists "when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."'" (*Wawrzenski*, at p. 693; see § 12923, subd. (a); *Beltran*, at p. 878.)

25

Montes's evidence met this low bar, at least on summary judgment. He testified he told Calderon that Pelayo treated him "like trash" and humiliated him and that Montes was "being mentally and emotionally destroyed." Although PB Fasteners argues a "handful of statements made over the course of five years do not constitute a severe or pervasive harassment," Montes (to the extent he needed to under section 12923) presented evidence of more than a handful of statements, all but one of which occurred within the seven-month period from December 2018 to July 2019 when Montes was temporarily assigned to the shipping department. In his declaration Montes stated Pelayo made derogatory comments two to three times a day between December 2018 and July 2019. Although PB Fasteners contends Montes may not rely on his declaration to the extent it contradicts his deposition testimony, Montes testified in his deposition to eight incidents between December 2018 and July 2019 and, when counsel for PB Fasteners asked Montes whether Pelayo made any other offensive comments, Montes said "I know there are, but I don't recall right now." A reasonable jury could find this evidence constituted severe or pervasive harassment. (See *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 39 ["Incidents of harassing conduct over a short period of time may constitute severe or pervasive harassment."]; *Fuentes v. AutoZone, Inc.* (2011) 200 Cal.App.4th 1221, 1234 [harassment over a three-week period "was both pervasive and severe"].)

26

E.      *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Cause of Action for Retaliation*

"To establish a prima facie case of retaliation under FEHA, an employee must show that (1) she engaged in a 'protected activity,' (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Bailey v. San Francisco Dist. Attorney's Office*, *supra*, 16 Cal.5th at p. 636; see *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""drops out of the picture,"" and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz*, at p. 1042.)

Montes submitted evidence PB Fasteners terminated his employment shortly after he asked to return to work with accommodations. Requesting accommodation for a disability is a protected activity under FEHA. (*Miller v. Department of Corrections & Rehabilitation*, *supra*, 105 Cal.App.5th at p. 285; *Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 990.) "A causal link may be established with evidence demonstrating that the employer was aware of the protected activity and the adverse action followed within a relatively short time." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018; see *Nadaf-Rahrov*, at p. 990.) This evidence established a prima facie case of retaliation.

27

PB Fasteners, however, provided a legitimate non-retaliatory reason for terminating Montes's employment: Montes's restrictions prevented him from performing his job as a maintenance mechanic, and PB Fasteners had no vacant position for which Montes was qualified. That was sufficient to overcome the presumption of retaliation. (See *Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 990 ["the fact that [the employer's] rationale might not have absolved [the employer] of liability under [the employee's] disability-related claims does not demonstrate that [the employer's] true motive was retaliation"].)

But Montes met his burden on summary judgment to show PB Fasteners' stated reason for terminating his employment was pretextual. As discussed, Montes presented evidence that Pelayo exhibited bias against him because of his disability and that PB Fasteners' decisionmakers relied on Pelayo's input in deciding Montes could not perform his job as a maintenance mechanic. Cheplak testified that he deferred to Pelayo in deciding whether Montes could return to the maintenance mechanic position; that Pelayo said Montes could not perform the physical demands of the job; and that, solely based on his conversation with Pelayo, Cheplak recommended to Contreras and Scott Cooper, PB Fasteners' general manager, that the company not allow Montes to return to his previous job. And when Cooper suggested Montes could do purchasing work in the maintenance department, Cheplak told Cooper that Pelayo said Montes was not proficient at computers. Cheplak recommended to Cooper that PB Fasteners terminate Montes's employment, and Cooper agreed.

28

Under "the so-called '"cat's paw"'" doctrine,[9] a plaintiff 'need not demonstrate that every individual who participated in the [challenged employment action] shared discriminatory animus in order to defeat a summary judgment motion. . . . [S]howing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory, even absent evidence that others in the process harbored such animus.'" (*Lin v. Kaiser Foundation Hospitals* (2023) 88 Cal.App.5th 712, 722-723; see *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 551 [same]; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 116 [an employer is responsible "where discriminatory or retaliatory actions by supervisory personnel bring about adverse employment actions through the instrumentality or conduit of other corporate actors who may be entirely innocent of discriminatory or retaliatory animus"].) Because Cheplak relied significantly, indeed exclusively, on Pelayo's assessment of Montes's abilities, and Cooper in turn adopted Cheplak's recommendation to fire Montes, Montes created a triable issue of material fact regarding retaliatory intent.

---

9       The "cat's paw" doctrine derives from a fable where a monkey induces a cat to extract roasting chestnuts from a fire. (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 114, fn. 14.) Under the doctrine, "[i]mputation of retaliatory animus will be justified by any set of facts that would permit a jury to find that an intermediary, for whatever reasons, simply carried out the will of the actuator, rather than breaking the chain of causation by taking a truly independent action." (*Ibid.*)

F.     *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Cause of Action for Failure To Prevent Discrimination and Harassment*

Section 12940, subdivision (k), requires an employer "to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  PB Fasteners argues Montes's cause of action for failure to prevent discrimination and harassment "automatically fails as a matter of law when the underlying discrimination and retaliation claims also fail." However, as discussed, there were triable issues of material fact regarding whether PB Fasteners discriminated and retaliated against Montes and whether Pelayo harassed him.  Therefore, a jury could reasonably find PB Fasteners did not take all reasonable steps necessary to prevent discrimination and harassment.  (See *Caldera v. Department of Corrections & Rehabilitation*, *supra*, 25 Cal.App.5th at p. 44 ["the jury could have reasonably determined that regardless of whatever steps the [employer] had taken to prevent harassment, those steps were not effective; thus, the jury could reasonably find that the [employer] had failed 'to take all reasonable steps' to prevent the harassment"]; *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.*, *supra*, 122 Cal.App.4th at p. 1024 [an "employer's claim that its procedures are effective in addressing discrimination is negated by proof of retaliation"].)

G. *The Trial Court Erred in Granting the Motion for Summary Adjudication on Montes's Cause of Action for Wrongful Termination in Violation of Public Policy*

An "'employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action.'" (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1377.) "FEHA's provisions may provide the policy basis for a claim for wrongful termination in violation of public policy." (*Zamora v. Security Industry Specialists, Inc.*, *supra*, 71 Cal.App.5th at p. 31.)

Montes bases his cause of action for wrongful termination on his allegations PB Fasteners terminated his employment in violation of FEHA's prohibitions against discrimination and retaliation. As discussed, there were triable issues of material fact regarding whether PB Fasteners violated FEHA by terminating Montes's employment. That same evidence created a triable issue of fact regarding whether PB Fasteners wrongfully terminated Montes's employment in violation of public policy. (See *Zamora v. Security Industry Specialists, Inc.*, *supra*, 71 Cal.App.5th at p. 62 [cause of action for wrongful termination in violation of public policy "rises and falls" with FEHA causes of action]; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 604 [because employee created triable issues of material fact on her cause of action for discrimination under FEHA, the trial court erred in granting a motion for summary adjudication on a wrongful termination cause of action based on the same facts].)

31

H.   *The Trial Court Erred in Granting Pelayo's Motion
     for Summary Adjudication on Montes's Claim for
     Punitive Damages, but Did Not Err in Granting
     PB Fasteners' Motion*

1.   *Whether Montes Is Entitled to Punitive
     Damages Against Pelayo Is a Factual Issue*

A plaintiff may recover punitive damages for violations of FEHA "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a); see *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 215 [punitive damages are recoverable for FEHA violations]; *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal.App.4th 1403, 1435 [same].) "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) As discussed, Montes presented evidence Pelayo ridiculed him for needing accommodations and, despite Montes's physical restrictions, required Montes to climb stairs and perform strenuous janitorial work. A reasonable jury could find this evidence demonstrated oppression or malice.

32

2. *Montes Did Not Submit Evidence a Managing Agent of PB Fasteners Ratified Pelayo's Misconduct*

Under Civil Code section 3294, subdivision (b), a court can award punitive damages against a corporation based on the acts of an employee if an "officer, director, or managing agent of the corporation" had "advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct" of the employee. "For purposes of determining an employer's liability for punitive damages, ratification generally occurs where, under the particular circumstances, the employer demonstrates an intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee in the performance of his job duties." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 726; see *Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 168 ["'ratification' is the '[c]onfirmation and acceptance of a previous act'"].)

Montes concedes Pelayo was not an officer, director, or managing agent of PB Fasteners, but he argues that Cooper (the general manager), Cheplak, and Contreras were managing agents and that they ratified Pelayo's conduct.[10] Montes cites evidence that PB Fasteners continued to employ Pelayo in March 2023, that Cooper did not investigate Montes's allegations or ask Pelayo whether they were true, and that PB Fasteners did not send Pelayo to receive training to prevent him from harassing

---

[10] Montes does not argue that PB Fasteners had advance knowledge of Pelayo's unfitness or that it authorized Pelayo's wrongful conduct.

33

others. Montes, however, did not present any evidence Cooper or any PB Fasteners managing agent knew, while Montes worked at PB Fasteners, about the harassment. (See *Cruz v. HomeBase, supra,* 83 Cal.App.4th at p. 168 [a "corporation cannot confirm and accept that which it does not actually know about"]; cf. *Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086, 1126 [insurance company ratified an attorney's conduct where the "pattern of not accepting additional insured tenders [had] gone on for years and clearly was known to the officers and managing agents of" the insurance company]; *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1433 [employer could be liable to an employee for punitive damages where the employee reported harassment to his superior several times, but "nothing was done to punish" the harasser].)[11]

To the extent Montes argues PB Fasteners ratified Pelayo's conduct after Montes filed this action, Montes did not create a triable issue of material fact regarding how PB Fasteners responded to Montes's allegations. Montes cites Cooper's deposition testimony that Cooper did not ask Pelayo about the allegations in the lawsuit and did not know whether anyone else had done so, but Cooper also testified that, "in this type of case, human resources and legal will do whatever investigation . . . is needed." Montes's evidence would not allow a reasonable jury to conclude no one at PB Fasteners investigated Montes's allegations or questioned Pelayo about them. Nor does Montes

---

[11] Montes does not argue his testimony that he complained about Pelayo to Calderon (the former human resources administrator) created a triable issue of material fact regarding whether PB Fasteners knew about Pelayo's misconduct.

cite authority for the proposition an employer's failure, after an employee files an action for harassment, to terminate the alleged harasser's employment or send the harasser to training is sufficient to create a triable issue of material fact regarding whether the employer ratified the harassment.

Montes also asserts PB Fasteners "has hidden documents and changed its story regarding why Montes was terminated, showing malice, oppression, and fraud." Montes, however, does not cite any evidence to support those assertions. The cases Montes cites involve employers who gave pretextual reasons for adverse employment actions. (See *Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 454, 455 [substantial evidence supported the jury's finding a supervisor "acted with malice or oppression" by terminating an employee who complained of discrimination and "concoct[ing] a reason for termination"]; *Cloud v. Casey* (1999) 76 Cal.App.4th 895, 912 [evidence an employer denied the plaintiff a promotion based on her gender and gave a pretextual reason for its decision supported "the jury's determination that the conduct was willful and in conscious disregard of" the plaintiff's rights].) Those cases do not apply here, where PB Fasteners admits it fired Montes because of his disability, but argues he could not perform his job.[12]

---

[12] Because Montes submitted evidence creating triable issues of material fact regarding whether PB Fasteners violated FEHA, the trial court also erred in granting summary adjudication on Montes's cause of action for declaratory relief.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting the motion by PB Fasteners and Pelayo for summary judgment. The trial court is directed to enter a new order (1) denying PB Fasteners' motion for summary adjudication on Montes's causes of action for discrimination, failure to provide reasonable accommodations, failure to engage in an interactive process, harassment, retaliation, failure to prevent discrimination and harassment, wrongful termination in violation of public policy, and declaratory relief; (2) denying Pelayo's motion for summary adjudication on Montes's cause of action for harassment; (3) denying Pelayo's motion for summary adjudication on Montes's claim for punitive damages; (4) granting PB Fasteners' motion for summary adjudication on Montes's claim for punitive damages; and (5) denying the motion for summary judgment. Montes is to recover his costs on appeal.


SEGAL, J.

We concur:


MARTINEZ, P. J.


STONE, J.

36